## Wyoming Radio, Inc. *v.* National Association of Broadcast Employees & Technicians, AFL-CIO, Appellant.

Argued November 20, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*Robert B. Fleming,* of the New York Bar, admitted especially for argument, with him *James P. Harris, Jr.,* and *James, Harris, McLean, Silverblatt & Miner,* for appellants.

*Leon H. Kline,* with him *Murray Mackson, Sol Lubin,* and *Martin H. Philip,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 18, 1960:

On September 1, 1958, the plaintiff, Wyoming Radio, Inc., acquired from Radio Anthracite, Inc., in Nanticoke, radio station WNAK. In doing so, it accepted all obligations under a collective bargaining agreement which had been entered into by Radio Anthracite, Inc. with the National Association of Broadcast Employees and Technicians, AFL-CIO. This agreement provided: "The Company agrees to meet with the Union Grievance Committee which shall be composed of employees of the Company and which may be accompanied by a Representative or Representatives of the Union, for the purpose of adjusting all disputes, misunderstandings, or interpretations of this Agreement. Such a meeting may be called by either party to this Agreement and shall take place within three (3) business days after such issuance of notice. If any dispute shall not be settled within ten (10) days after such discussion is initiated thereon, the matter may be referred by either party to an Impartial Arbitrator to be selected in accordance with the Rules of the American Arbitration Association, whose decision shall be final and binding on both parties. All expenses shall be borne in accordance with the AAA Rules and Regulations."

In the early part of 1959 a dispute arose between Wyoming Radio and the Union as to whether a William Phillips, who was conducting a show on WNAK, and who was not a member of the Union, should be allowed to perform "on-the-air" announcing, which, under the contract, was restricted to staff employees of the station.

On April 22, 1959, the president of the plaintiff company and William Connelly, President of Local No. 23 of the Union, discussed at length this dispute. Subsequently each had a different version as to what was

said and what, if anything, was agreed upon. The president of Wyoming Radio, Inc., asserted that Connelly agreed that the Union would not require William Phillips to join the Union while Connelly denied that any such agreement was made, and stated that he had no authority to enter into such an understanding.

On July 13, 1959, the Union began to picket the radio station. Three days later it requested, in accordance with a provision in the contract, that the American Arbitration Association take jurisdiction of the dispute between it and the plaintiff radio station. On July 24, 1959, the plaintiff filed a complaint in equity against the national as well as local union, the president of the local union, and the American Arbitration Association, praying that they be enjoined from pursuing arbitration proceedings. The court of common pleas held a hearing on the complaint and on August 7, 1959, issued the preliminary injunction prayed for. The defendants appealed.

The injunction must be dissolved. Arbitration is not a makeshift or a subterfuge. It is not an excuse for delay or a fan for the cooling off of tempers. It is a solemn and serious undertaking for the attainment of justice, and when parties engaged in a common enterprise agree to settle by arbitration all differences which may arise between them they are bound by their commitments as much as if they had entered into a stipulation in Court.

The collective bargaining agreement in this case specifically provides the machinery of discussion and negotiation "for the purpose of adjusting *all* disputes, misunderstandings, or interpretations of this Agreement." (Emphasis supplied) Further on, in the same paragraph, the agreement provides that if any dispute which brought the parties into discussion is not settled within ten days, "the matter may be referred by either party to an Impartial Arbitrator . . ."

It cannot be doubted that a legitimate dispute arose between the company and the union, and it is equally unquestioned that the dispute was not settled. It is not now within the province of the company to determine whether the dispute should or should not be arbitrated. There is no limitation in the contract as to the nature of the dispute which shall be cognizable by arbitration. The person who offers carte blanche to another to enter the temple of arbitration may not later on impose restrictions as to the type of clothing the other person shall wear when he presents himself at the doors of the temple.

In *Mack Manufacturing Corporation v. International UAW,* 368 Pa. 37, management and union entered into a contract covering labor relations, a provision of which called for arbitration in the event of controversy. When the company laid off employees because of business conditions, the union complained that the company had "laid off employees out of line of seniority." The company demanded a list of the employees allegedly aggrieved, the union refused to submit such a list, stating this information was within the knowledge of the company. The union requested arbitration. The company sought an injunction against the union, arguing that by refusing to supply the indicated list, the union had waived its right to go to arbitration. The lower court refused the injunction and this Court affirmed its order saying: "The learned court below held that the plaintiff and defendant had bound themselves to submit to arbitration disputes provided for in their labor relations agreement, that disputes arising out of layoffs by seniority were clearly within its provisions, that the interpretation of the provisions of the agreement relating to grievance procedure was for the arbitrator to decide . . . What the plaintiff seeks is a decision on the ques-

tion whether the supplying of this list is a prerequisite to the consideration of the grievance and to make it arbitrable. But we see no real distinction between the statement of what the learned court below viewed as the question to be determined and what counsel contends is the question, for we agree with the court's interpretation of the agreement which is that whether the grievance has been presented in the proper form, whether the plaintiff has the right to refuse to consider it until it obtains the list demanded, and whether the points raised are arbitrable at this time, are all questions for the arbitrator."

In the case at bar, the question as to whether William Phillips is permitted, not being a member of the Union, to do "on-the-air" announcing, is a question arbitrable under the contract both parties entered into voluntarily.

Reversed with a procedendo.