354 A.2d 559

Antoinette MILBERRY et al.

v.

**BOARD OF EDUCATION OF the SCHOOL DISTRICT OF PHILADELPHIA, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 21, 1975.

Decided April 7, 1976.

Robert T. Lear, Philadelphia, for appellant.

Leonard M. Sagot, Randall J. Sommovilla, Philadelphia, for appellees.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

The question presented is whether a school district may agree in a collective bargaining agreement to arbi-

trate an unsatisfactory performance rating of a teacher. The court of common pleas held that it may do so. We agree and affirm.

The collective bargaining agreement between the Philadelphia Board of Education and the Philadelphia Federation of Teachers establishes a comprehensive grievance procedure which terminates in arbitration. Article B–V, section 2f(ii) (hereinafter "the agreement") provides:

> "The employee may invoke the grievance procedure if he believes that his rating is improper because of capriciousness, arbitrariness, unfairness, prejudice, failure to conform with prevailing practices for rating, or absence of factual support for such rating."

At the end of the 1973–74 school year, an unsatisfactory rating was filed against Antoinette Milberry, a tenured teacher. On July 3, 1974, Milberry and the union invoked the grievance procedures to challenge the rating. On July 8, 1974, the board informed Milberry that her dismissal was being sought on the ground of incompetency. When the board later refused to allow the grievance to proceed to arbitration, Milberry and the union initiated this action in equity. On January 17, 1975, the court of common pleas ordered the board to submit the grievance to arbitration in accordance with the provisions of the agreement. This appeal followed.[1]

The board maintains that sections 1122–32 and section 510 of the Public School Code[2] grant the board sole au-

1. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(4), 17 P.S. § 211.202(4) (Supp.1975).

   The union's contention that the appeal should be quashed is without merit. The order was final notwithstanding the court's direction that the case be retained on the docket until the arbitration was completed and a copy of the arbitrator's decision presented to the court. *Board of Educ. v. Philadelphia Federation of Teachers*, 464 Pa. 95–96 n. 2, 346 A.2d 35, 37 n. 2 (1975).

2. Act of March 10, 1949, P.L. 30, art. XI, §§ 1122–32, as amended, 24 P.S. §§ 11–1122 to 11–1132 (Supp.1975); id., art. V, § 510, as amended, 24 P.S. § 5–510 (Supp.1975).

thority to make decisions concerning the rating and dismissal of a tenured teacher. Therefore, the board argues, the agreement is invalid under section 703 [3] of the Public Employee Relations Act (PERA) insofar as it provides for arbitration of a grievance concerning an unsatisfactory rating when the rating has become the subject of a dismissal proceeding. We do not agree.

In the closely related case of *Board of Education v. Philadelphia Federation of Teachers*, 464 Pa. 92, 346 A. 2d 35 (1975), this Court held that section 703 of the PERA does not prohibit a school district from agreeing to arbitrate the discharge of a nontenured teacher. Citing *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), we held that section 703 does not prevent agreement to, or implementation of, a particular provision merely because the subject matter of that provision is covered by legislation. The statutory prohibition in the PERA applies only when the particular provision "would be in violation of, or inconsistent with, or in conflict with" a statutory directive. Section 703 must be considered in light of the PERA as a whole, which embodies a strong policy in favor of arbitrating disputes. Accordingly, we held in *Philadelpia Federation of Teachers*, supra, that the board is prohibited from delegating a particular function to the arbitrator only if the General Assembly has mandated that the function shall be discharged by the board alone.

██ The General Assembly has not mandated that review of unsatisfactory ratings be conducted only by the

3. That section provides:
"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters."
Act of July 23, 1970, P.L. 563, No. 195, art. VII, § 703, 43 P.S. § 1101.703 (Supp.1975).

board. The Public School Code requires the school district to rate the performance of all teachers. Section 1123 of the Code [4] specifies the manner in which the applicable standards and regulations are to be promulgated and indicates the persons who are permitted to do the rating. It does not specify procedures by which an unsatisfactory rating may be reviewed, nor does any other section of the Public School Code specifically cover this subject.

The agreement does not in any way affect the obligation of the board to rate teachers in conformance with section 1123. It does not define the standards or establish the practices by which teachers are to be rated by the school districts. The agreement provides only for an impartial review to determine whether the "rating is improper because of capriciousness, arbitrariness, unfairness, prejudice, failure to conform with prevailing practices for rating or absence of factual support for such rating." We conclude that the board is not precluded

---

4. That section provides:
    "In determining whether a professional employee shall be dismissed for incompetency, and in rating the services of a temporary professional employee, the professional employee or temporary professional employee shall be rated by an approved rating system which shall give due consideration to personality, preparation, technique, and pupil reaction, in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public Instruction, and to be revised, from time to time, by the Department of Public Instruction with the cooperation and advice of a committee appointed by the Superintendent of Public Instruction, including representation from district superintendents of schools, classroom teachers, school directors, school supervisors, and such other groups or interests as the Superintendent of Public Instruction may deem appropriate. Rating shall be done by or under the supervisions of the superintendent of schools or, if so directed by him, the same may be done by an assistant superintendent, a supervisor, or a principal, who has supervision over the work of the professional employee or temporary professional employee who is being rated: Provided, That no satisfactory rating shall be valid unless approved by the district superintendent."
Act of March 10, 1949, P.L. 30, art. XI, § 1123, as amended, 24 P. S. § 11–1123 (Supp.1975).

from agreeing to submit to arbitration a dispute concerning the propriety of an unsatisfactory rating.

The board contends, however, that even if the agreement does not constitute an invalid delegation of the board's authority to rate the performance of teachers, it does constitute an unlawful delegation of the board's authority to discharge tenured teachers when an unsatisfactory rating has become the subject of a dismissal proceeding. We disagree.

The General Assembly has granted certain procedural safeguards to any tenured teacher whom the board seeks to dismiss. The Public School Code provides that the tenured teacher has the right to a public hearing before the board, that two-thirds of the board members must vote for dismissal, and that the tenured teacher has the right to appeal an adverse decision to the Secretary of Education and eventually to the courts.[5] The agreement neither modifies nor creates an alternative to that dismissal procedure; nor does it provide for a review of the dismissal of a tenured teacher. Its sole effect on the dismissal process is to allow an arbitrator to determine the propriety of an unsatisfactory rating. That determination would be binding should the rating be introduced into evidence at a subsequent dismissal hearing before the board.[6] The requirements of the School Code have not been circumvented. All the parties have done is to accord the teacher a further procedural protection—the

5. See the Public School Code, Act of March 10, 1949, P.L. 30, art. XI, §§ 1122–32, as amended, 24 P.S. §§ 11–1122 to 11–1132 (Supp. 1975).

6. The board's practice of objecting to review by an arbitrator only when a dismissal proceeding has been instituted is untenable. Any determination by an arbitrator concerning the propriety of an unsatisfactory rating may have an effect on a subsequent dismissal proceeding. A first unsatisfactory rating is as relevant to a charge of incompetency as is a second unsatisfactory rating. Thus, we must consider the validity of the board's argument irrespective of the specific context in which a teacher seeks to invoke the agreement.

right to an impartial determination of an important evidentiary matter—which does not conflict with any mandate of the General Assembly.

Consequently, we conclude that section 703 of the PERA does not prevent implementation of Article B–V, section 2f(ii) of the agreement regardless of whether a dismissal proceeding had been instituted.

Motion to quash and motion to dismiss denied. Decree affirmed. Each party pay own costs.

JONES, C. J., did not participate in the consideration or decision of this case.

POMEROY, J., filed a concurring opinion.

EAGEN, J., dissents.

POMEROY, Justice (concurring).

A provision of the collective bargaining agreement between the Philadelphia Board of Education and its teachers permits an "unsatisfactory" rating of a professional employee to be the subject of a grievance and so arbitrable. In my view this provision is consonant with the scheme and intent of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.-101 *et seq.* (Supp.1975) [herein PERA] and, in the words of Section 703 of that Act, 43 P.S. § 1101.703, is neither "in violation of, or inconsistent with or in conflict with" the provisions of The Public School Code, Act of March 10, 1949, P.L. 30; as amended, 24 P.S. §§ 1–101 *et seq.* I therefore agree that the School Board was in error in resisting arbitration and that the court of common pleas correctly so decided and was warranted in granting equitable relief.

The Court, in reaching its conclusion to affirm the trial court, relies on its decision in what it terms "the closely related case" of *Board of Education v. Philadel-*

*phia Federation of Teachers*, 464 Pa. 92, 346 A.2d 35 (1975). That case in turn relied on the interpretation of Section 703 of the Act contained in the Court's opinion in *Penna. Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975). In the former case I dissented and in the latter disagreed with the portion of the opinion now relied upon. I continue of the views I expressed in those cases,[1] and feel equally strongly that in today's opinion the Court continues its unwarranted distortion of the plain language of Section 703 when it repeats that that section prohibits a delegation by a school board (or, presumably, any other public employer) of "a particular function to the arbitrator *only if the General Assembly has mandated that the function shall be discharged by the board alone*" (my emphasis).[2] Opinion of the Court, ante at 561.

The present case, in my view, bears only a superficial similarity to *Board of Education v. Philadelphia Federation of Teachers*, supra. The holding there was that PERA (Act 195) permitted a school board to agree to arbitrate the propriety of discharging a non-tenured teacher—thus sanctioning, as I believe, an impermissible surrender of a board prerogative under the School Code. See Sections 508, 1108 and 1122, of the School Code, Act of March 10, 1949, P.L. 30, art. 5, § 508 as amended, and art. 11 §§ 1108 & 1122, as amended, 24 P.S. §§ 5–508 (Supp.1975), 11–1108 (Supp.1975), 11–1122. Moreover, the agreement in that case, which stipulated that

1. See 464 Pa. 92, 108, 346 A.2d 35, 45 (1975) (Pomeroy, J., dissenting) and 461 Pa. 494, 513, 337 A.2d 262, 271 n. 1 (1975) (Pomeroy, J., concurring).

2. The actual provision of § 703 is as follows: "The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters." Act of July 23, 1970, P. L. 563, No. 195, art. VII, § 703, 43 P.S. § 1101.703 (Supp.1975).

the discharge of a non-tenured teacher should be only for "just cause", left the arbitrators free to adopt a standard for the discharge of teachers which differed from the carefully enumerated grounds of the School Code, i. e., incompetency, immorality, intemperance, cruelty, persistent and wilful violations of the school laws. Section 1122 of the School Code, supra.

In the case at bar, the collective bargaining agreement provides that the rating of a teacher as "unsatisfactory" is a proper subject of grievance and so of arbitration. Unlike a decision as to whether a teacher, tenured or otherwise, shall be discharged—matter clearly entrusted by the School Code to the school board—rating a teacher's performance is an administrative function. It is governed by standards and regulations set by the Department of Public Instruction, and is done by or under the supervision of the superintendent of schools or by such other administrator as supervises the work of the teacher being rated; no unsatisfactory rating is valid unless approved by the district superintendent. Sec. 1123 of the School Code, 24 P.S. § 11–1123 (Supp.1975).[3]

Under the agreement now before us a teacher's rating, if unsatisfactory, is reviewable in arbitration, but only to test whether it is warped by specified vices, viz., "capriciousness, arbitrariness, unfairness, prejudice, failure to conform with prevailing practices for rating or absence of factual support for such rating." (Collective bargain-

3. One purpose of rating is to aid in the determination as to whether a professional employee shall be dismissed for incompetency. Section 1123 of the Code, 24 P.S. § 11–1123 (Supp.1975), supra. Another purpose of rating is to provide an order for suspensions in connection with decreases in size of the staff of professional employees. Section 1125(a) of the Code, 24 P.S. § 11–1125. Under the latter section it is the duty of boards of school directors to establish a permanent record system containing ratings of each professional employee. A copy of any unsatisfactory rating is required to be sent to the professional employee concerned. No such employee may be dismissed unless such rating records have been kept on file by the board of school directors. Ibid.

ing agreement, Article B–V, Section 2F(ii), R. 6a). Thus the effect of the arbitration provision is to interject, in a case where a grievance is asserted, an additional step into the rating procedure—a further scrutiny, in addition to that of the district superintendent under the School Code, to ensure the procedural fairness of a recorded black mark against the competency of a teacher. The authority of the school board to make the ultimate decision whether or not to suspend or discharge a teacher is not abridged. I agree with the Court that the agreement in question "neither modifies nor creates an alternative to [the Code's] dismissal procedure; nor does it provide for a review of the dismissal of a tenured teacher. . . . All the parties have done is to afford the teacher a further procedural protection . . .." Opinion of the Court, ante at 562. As I observed in the outset, I cannot see that this rather limited additional review of an administrative function is "in violation of, or inconsistent with, or in conflict with", see § 703 of PERA, the scheme of the School Code governing the rating of professional employees. It is clear that under the Code not only the rating system but the rating process is to be fair; the arbitration to which the parties have agreed is designed to make doubly sure that unfairness does not creep into the handling of a particular case. Section 703 of PERA is not a bar to this design.