375 A.2d 692
**Patricia RYLKE et al., Appellants,**
**v.**
**PORTAGE AREA SCHOOL DISTRICT.**

Supreme Court of Pennsylvania.

Submitted Sept. 24, 1976.

Decided Feb. 28, 1977.

Reargument Denied Aug. 8, 1977.

482

Randall C. Rodkey, Abood, Rodkey & Eckel, Johnstown, for appellants.

Ferdinand F. Bionaz, Bionaz, Raptosh & McGlynn, Johnstown, for appellee.

William Fearen, Gen. Counsel, Pa. School Boards Assn., Harrisburg, for amicus curiae.

Leonard M. Sagot, Randall J. Sommovilla, Philadelphia, for Philadelphia Federation of Teachers.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from a Commonwealth Court order which affirmed an order of the Court of Common Pleas of Cambria County. The original order dismissed appellants' complaint in mandamus upon appellee's preliminary objections in the nature of a demurrer.

Patricia Rylke, William Ramus and Janet Humphrey, individual appellants, are former professional employees

of appellee, Portage Area School District. Appellant Portage Area Education Association (the Association) is the certified bargaining representative for the professional employees of appellee.

The Association and appellee entered into a collective bargaining agreement covering the period from July 1, 1971 to June 30, 1973. The agreement established a four-step grievance procedure, with binding arbitration as the final step. The agreement also contained provisions relating to job security.

In May, 1973, the individual appellants were notified that they were being suspended at the end of the 1973 school year. Appellants filed a grievance, alleging that appellee had failed to comply with the required procedures mandated by the agreement in suspending the three individuals. The first three steps of the grievance procedure were followed; the Board, however, refused to submit the issue to binding arbitration.

On August 27, 1973, appellants filed a complaint in mandamus, which sought to have appellee submit the dispute to binding arbitration. Appellee filed preliminary objections, and on April 23, 1974, the court en banc dismissed appellants' complaint. The Commonwealth Court affirmed on July 7, 1975. *Rylke v. Portage Schools*, 20 Pa.Cmwlth. 158, 341 A.2d 233 (1975). Appellants filed a timely petition for allowance of appeal, which this court granted on October 30, 1975.

The resolution of the instant dispute requires a three-step analysis. We must first determine what both parties intended to accomplish by incorporating certain sections of the Public School Code of 1949[1] (the School Code) into the collective bargaining agreement. Once the intent is determined, we must see if that intent can lawfully be effected. If it can, we must see if appellants'

1. Act of March 10, 1949, P.L. 30, art. I, § 101, et seq., 24 P.S. § 1–101, et seq.

complaint in mandamus stated a cause of action upon which relief could be granted.

The School Code gives a special status to professional employees, i. e. tenured teachers.[2] While a tenured teacher may always be dismissed for cause, 24 P.S. § 11–1122, the School Code limits the causes for which a tenured teacher may be suspended.[3] Furthermore, the School Code requires the employer-school district to consider professional evaluations and seniority of individual teachers when determining who should be suspended. 24 P.S. § 11–1125.

Article VIII of the Collective Bargaining Agreement in the instant case provides:

"The Pennsylvania School Code includes certain job security provisions, certification, and other regulatory provisions associated with various classes of employes. The parties hereby aver that such provisions of the School Code represent their complete agreement, and that said provisions shall govern the manner in which the job security, job progression, and reduction in force practices shall be effected with respect to members of the bargaining unit.

"In the event that additional provisions not inconsistent or in conflict with those enumerated in the School Code shall be agreed upon by the parties with respect to job security, job progression, and reduction in force, such provisions shall be made a part of Appendix C which shall be made part of this agreement."

2. The School Code defines professional employees as " . . . those who are certified as teachers . . . ." 24 P.S. § 11–1101(1).

3. 24 P.S. § 11–1124 allows suspensions when (1) pupil enrollment substantially decreases; (2) educational programs are altered or curtailed; (3) schools are consolidated, and (4) new school districts are formed.

The above summarized sections of the School Code were thus incorporated into the collective bargaining agreement.

The agreement further provides:

"The parties agree that grievances which arise out of the interpretation of this agreement, shall be resolved in accordance with the grievance procedure described in Appendix D attached hereto and made part of this agreement." [4]

Reading the two above-quoted passages together, we believe the parties incorporated the relevant sections of the School Code into the agreement to allow, *inter alia,* an arbitrator to decide whether the School District has complied with those sections in suspending professional employees.

---

**4.** Appendix D of the Collective Bargaining Agreement provides:

"The parties of this agreement agree that an orderly and expeditious resolution of grievances arising out of the interpretation of the terms of this agreement shall provide for a four (4) step process which is described in the following paragraphs and the table attached hereto.

"Step I. Person, or persons, initiating the grievance shall present the grievance, in writing and on a form provided by the employer, to the elementary or secondary school principal within 5 school days after its occurrence.

"The elementary or secondary school principal shall reply to the grievance within 5 school days after initial presentation of the grievance.

"Step II. If the action in Step I above fails to resolve the grievance to the satisfaction of the affected parties, the grievance shall be referred to the superintendent.

"Step III. If the action in Step II above fails to resolve the grievance, within 5 school days to the satisfaction of the affected parties, the grievance shall be referred to the Portage Area School Board at its next official meeting.

"Step IV. If the action in Step III above fails to resolve the grievance to the satisfaction of the affected parties, the grievance shall be referred to binding arbitration as provided in Section 903 of Act 195.

"If the grievance fails to meet the criteria of Section 903 of the Act, the decision of the Board of Education in Step IV shall be final."

As this court stated in *Wyoming Radio v. Nat. Ass'n of B. Emp. & T.*, 398 Pa. 183, 187, 157 A.2d 366, 367 (1960):

"It cannot be doubted that a legitimate dispute arose between the Company and the Union, and it is equally unquestioned that the dispute was not settled. It is not now within the province of the Company to determine whether the dispute should or should not be arbitrated. There is no limitation in the contract as to the nature of the dispute which shall be cognizable by arbitration. The person who offers carte blanche to another to enter the temple of arbitration may not later on impose restrictions as to the type of clothing the other person shall wear when he presents himself at the doors of the temple."

While the contract itself has no limitations on which issues can be arbitrated, appellee claims that the Public Employees Relations Act[5] (PERA) prohibits the submission of the instant dispute to arbitration.

Section 703 of PERA provides:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters." 43 P.S. § 1101.703.

Appellee argues that since the School Code provides for suspension of professional employees but says nothing about arbitrating the propriety of suspensions, allowing arbitration would be "the implementation of a provision inconsistent with a statute enacted by the General Assembly." We do not agree.

5. Act of July 23, 1970, P.L. 563, No. 195, art. I, § 101, et seq., 43 P.S. § 1101.101, et seq.

First, and most important, PERA commands that "Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is *mandatory*." 43 P.S. § 1101.903 (Emphasis supplied.) Furthermore, two recent decisions of this court make it clear that the instant dispute may be arbitrated.

In *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), this court was asked to interpret § 701 of PERA in light of limitations in §§ 702 and 703. These three sections provide:

"Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession." 43 P.S. § 1101.701.

"Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives." 43 P.S. § 1101.702.

"The parties to the collective bargaining process shall not effect or implement a provision in a collective

bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters." 43 P.S. § 1101.703.

In discussing the relationship between §§ 701 and 702, the Court stated in *State College,* at page 268:

"Thus we hold that where an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply because it may touch upon basic policy. It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole. If it is determined that the matter is one of inherent managerial policy but does affect wages, hours and terms and conditions of employment, the public employer shall be required to meet and discuss such subjects upon request by the public employe's representative pursuant to section 702."

In the instant case, we believe that arbitrating the propriety of an individual's suspension has a substantial impact on "wages, hours and terms and conditions of employment." All appellants ask is that an arbitrator be allowed to decide if the School Code has been followed. Hence, § 702 does not prohibit bargaining on the dispute in the instant case.

In *State College* the court further stated, at page 270:
"We therefore conclude that items bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions explicitly

and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment."

We can find nothing which prohibits the submitting of the instant dispute to arbitration. PERA provides, on the contrary, that collective bargaining is mandatory. See 43 P.S. § 1101.903. We thus hold that the submission of suspensions to arbitration is bargainable under PERA.

In *Board of Ed. v. Philadelphia Fed. of Teach. Loc. No. 3,* 464 Pa. 92, 346 A.2d 35 (1975), the school board argued that suspension of a non-tenured teacher could not be submitted to arbitration. Even though the collective bargaining agreement clearly called for arbitration, the board claimed that this would unlawfully delegate to an arbitrator a responsibility which could be discharged only by the school board. The court disagreed and held, *inter alia,* that because of a strong public policy favoring arbitration, the issue could be arbitrated. We see no distinction between *Philadelphia* and the instant case. There is, thus, no prohibition in statutes or case law against the submission of the instant dispute to arbitration.

■■ Having determined the parties' intent and that the intent can lawfully be carried out, we must determine if appellants' complaint in mandamus stated a cause of action. Mandamus will lie only when there is no other legal remedy available, a corresponding right and duty between the parties, and the act requested is purely ministerial and not discretionary. *Porter v. Bloomsburg State College,* 450 Pa. 375, 301 A.2d 621 (1973). The collective bargaining agreement establishes the right of appellants to submit the dispute to arbitration. The ministerial duty of appellee to submit the dispute to binding arbitration also comes from the agreement. Prior to implementation of the agreement, appellants

could have utilized the Local Agency Law[6] to challenge the propriety of the suspensions. The parties, however, have by contract agreed that arbitration is their sole remedy. Mandamus was thus the proper form of relief.

■ The court below held that the instant complaint failed to state a cause of action because it failed to aver that the suspensions were "arbitrary, capricious or illegal implementation of the School Code." While the complaint could have been more artfully drafted, it did state:

"5. On or about May 23, 1973, all plaintiffs received a letter from the defendant informing them that their employment with defendant would be terminated at the end of the 1972–73 school year. Plaintiffs were in fact dismissed by the defendant. *Said dismissal is illegal and unlawful, being in violation of both the applicable law and the agreement between the Association and the defendant.*" (Emphasis supplied.)

We believe mandamus was the proper remedy to compel appellee to submit the dispute to arbitration, and that the instant complaint was sufficient to state a cause of action in mandamus.

In summary, we conclude that (1) the parties intended to submit the propriety of suspensions to an arbitrator; (2) the parties' intent can lawfully be carried out; and (3) appellants stated a cause of action upon which relief could be granted.

Order of the Commonwealth Court affirming the order of the Court of Common Pleas of Cambria County is reversed and record remanded to the Court of Common Pleas of Cambria County for proceedings consistent with this opinion.

JONES, C. J., did not participate in the consideration or decision of this case.

6. Act of December 2, 1968, P.L. 1133, § 1, et seq., 53 P.S. § 11301, et seq.

EAGEN, J., files a concurring opinion.

POMEROY, J., files a dissenting opinion.

EAGEN, Justice, concurring.

While I did not or do not agree with the wisdom or logic of this Court's decisions in *Pennsylvania Labor Relations Board v. State College,* 461 Pa. 494, 337 A.2d 262 (1973) and *Board of Education v. Philadelphia Federation of Teachers Local No. 3,* 464 Pa. 92, 346 A.2d 35 (1975),[1] in view of the holdings in those cases, I feel compelled to concur in the result reached by Mr. Justice O'Brien in the present case.

POMEROY, Justice, dissenting.

I must respectfully dissent. The Court's decision today, holding that a school district may agree to submit to binding arbitration the propriety of suspending a professional employee, relies heavily upon this Court's prior decisions in *Board of Education v. Philadelphia Federation of Teachers, Local No. 3,* 464 Pa. 92, 346 A.2d 35 (1975), and *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975). In the former case I dissented and in the latter I disagreed with a portion of the opinion relied upon in the instant case. I continue to adhere to the views I expressed in those cases.[1]

In my opinion, the majority continues to perpetuate an unwarranted distortion of the plain language of section 703 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.101 *et seq.* (Supp.

1. Mr. Justice Pomeroy and this writer declined to join in those decisions.

1. See 464 Pa. 92, 108–16, 346 A.2d 35, 43–48 (1975) (Pomeroy, J., dissenting); 461 Pa. 494, 513 n. 1, 337 A.2d 262, 271 n. 1 (1975) (Pomeroy, J., concurring). See also *Milberry v. Board of Education of School District of Philadelphia,* 467 Pa. 79, 85, 354 A.2d 559, 563–64 (1976) (Pomeroy, J., concurring).

1976), when it repeats that part of the *State College* opinion holding that "items bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions explictly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment." Opinion of the Court, *ante* at 696, quoting *State College, supra* 461 Pa. at 510, 337 A.2d at 270. I am also of the view that today's holding sanctions, as did the holding in *Philadelphia Federation of Teachers,* an impermissible surrender of a school board's prerogatives under the School Code. *See* sections 1124 & 1125 of the School Code, Act of March 10, 1949, P.L. 30, art. XI, §§ 1124 & 1125, *as amended,* 24 P.S. §§ 11–1124 & 11–1125 (Supp.1976–1977). Accordingly, for the reasons set forth in my separate opinions in *Philadelphia Federation of Teachers* and *State College,* see note 1, *supra,* I dissent.