Scranton Federation of Teachers, Local 1147, AFT, Appellant *v.* Scranton School District, Appellee.

386

Argued April 4, 1979, before President Judge
Bowman and Judges Crumlish, Jr., Wilkinson, Jr.,
Rogers, Blatt, Craig and MacPhail. Judges Mencer
and DiSalle did not participate.

*Michael Brodie,* with him *Pechner, Dorfman, Wolffe, Rounick & Cabot,* for appellant.

*James A. Kelly,* District Solicitor, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, September 5, 1979:

The harsh winds of the winter of 1976-1977 continue to disturb the Commonwealth as evidenced by the appeal presently before the Court from an order of the Court of Common Pleas of Lackawanna County setting aside an arbitration award as in violation of, inconsistent with and in conflict with the Act of June 1, 1977 (Act), P.L. 4, 24 P.S. §15-1501.1, which supplemented the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §1-101 et seq. The Scranton Federation of Teachers, Local 1147, AFT (Union) seeks reinstatement of the award which granted additional pay for days rescheduled as a result of the weather emergency of 1977. Appellee Scranton School District (Employer) contends the award is contrary to the language of the Act, is not drawn from the collective bargaining agreement and is illogical inasmuch as it grants pay for days not worked.

The grievance giving rise to arbitration was filed in response to the Employer's modification of the school calendar. Severe weather conditions and fuel shortages required the closing of nine gas-fired schools for ten days and of nineteen nongas-fired schools for eight days. All schools were closed for one additional day because of snow. The modified calendar added four pupil instruction days by eliminating two days previously designated vacation days and ex-

tending the teaching year by two days. A fifth pupil instruction day was recognized by converting a teacher in-service day to that purpose.[1]

With respect to the calendar, the collective bargaining agreement between the Employer and the Union in Article 25 provided:

Sec. 1. The school year for teachers shall consist of one hundred eighty-five (185) days exclusive of holidays declared on the school calendar, one (1) day of which shall be a faculty workshop day. Any day beyond one hundred

---

[1] Computation of instructional days for students:

| For nongas-fired schools | | For gas-fired schools |
|---|---|---|
| 180 | instructional days originally scheduled | 180 |
| —8 | days of weather emergency closings | —10 |
| 172 | | 170 |
| +5 | days added or converted by modified calendar | +5 |
| 177 | | 175 |
| —1 | day of closing due to snow | —1 |
| 176 | student instructional days | 174 |

Computation of teacher service days:

| For nongas-fired schools | | For gas-fired schools |
|---|---|---|
| 185 | teacher service days originally scheduled | 185 |
| —8 | days of weather emergency closings | —10 |
| 177 | | 175 |
| +4 | days added by modified calendar | +4 |
| 181 | | 179 |
| —1 | closing due to snow | —1 |
| 180 | | 178 |
| +9 | sum of days of emergency school closings to be counted as days worked pursuant to Article 25, Sec. 2 | +11 |
| 189 | days teachers were committed | 189 |

eighty-five (185) on which teachers are required to report shall be compensated for at the daily rate of the teacher affected, pro-rata at 1/185th of the teacher's salary.

Sec. 2. Emergency school closing, in whole days or in part, for reasons beyond the teachers' control, shall be counted as whole days, and shall not extend the school year for teachers beyond one hundred eighty-five (185) days unless such extension is required to fulfill one hundred eighty (180) days of pupil instruction. Extension of the school year for teachers for this specific purpose shall not require compensation in excess of the teacher's regular salary.

Superimposed upon this labor agreement provision is the Act, which amended the Public School Code of 1949 "by providing for the emergency generated by the gas crisis in relationship to the length of the school year, the compensation of employes and the graduation of qualified students." The Act in part provided:

Section 1501.1. Weather Emergency of 1977. —(a) For the school year 1976-77 all public . . . schools . . . shall make every effort to keep open for at least one hundred seventy-seven (177) days of instruction for pupils. . . . No employe of any school closed by reason of the Weather Emergency of 1977 shall receive more or less compensation than that to which the employe would otherwise have been entitled to from the school district . . . had the Weather Emergency of 1977 not occurred.

(b) An employe shall not receive additional salary for services rendered on days . . . rescheduled as a result of the Weather Emergency of 1977, unless the number of days rescheduled extends the number of days provided

for in the original school calender; in which case an employe shall receive a pro-rata increase for such additional days.

In his opinion accompanying the award, the arbitrator chosen by the parties to hear the dispute recognized the existence of the Act but properly restricted his analysis to an interpretation of Article 25 of the collective bargaining agreement.[2] Thus, but for the Act and section 703 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. §1101.703, judicial review of the award would be unwarranted. However, section 703 mandates that "[t]he parties to the collective bargaining process shall not . . . implement a provision in a collective bargaining agreement if the implementation of that provision would be . . . in conflict with any statute. . . ." The effect of section 703 on provisions of collective bargaining agreements was initially delineated by the Supreme Court in *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975). Reversing this Court and construing section 703 narrowly, Justice NIX wrote: "We believe that section 703 only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any statutory directive." 461 Pa. at 508, 337 A.2d at 269. *See also Milberry v. Board of Education,*

---

[2] The arbitrator reasoned that the teachers, by the terms of the collective bargaining agreement, had to be credited with working 189 days or four more than the 185 which constitute the contractual school year. The Employer would owe teachers compensation for those days unless the exception framed in Article 25, Section 2 was found to be applicable. The arbitrator concluded that the extension of the school year was not required at least to the extent that two teacher work days could have been converted to pupil instruction days. He, therefore, directed the Employer to pay district teachers 2/185ths of their respective salaries. Teachers in schools that had more than two noninstructional days that could have been converted to instruction were to receive additional appropriate pay.

467 Pa. 79, 354 A.2d 559 (1976); *Board of Education v. Philadelphia Federation of Teachers*, 464 Pa. 92, 346 A.2d 35 (1975).

The facts here present the explicit inconsistency required by the Supreme Court; the Act forbids the exact action which the arbitrator directed *i.e.* the award grants pursuant to the collective bargaining agreement, additional pay for services rendered on days rescheduled as a result of the Weather Emergency of 1977, whereas the Act provides that no employee shall receive more or less compensation as a result of that emergency.

Even a cursory reading of the Act discloses a clear legislative concern for the number of "days of instruction" to be offered in Commonwealth schools. The superficial inconsistency between the last sentence of subsection (a), which directs that no more or less compensation shall be paid employees, and subsection (b), which states that additional compensation may be paid if the number of days rescheduled extends the number of days provided for in the original school calendar, is readily eliminated if one recognizes this concern for a minimum of "days of *instruction.*" Fuel shortages and snow eliminated eleven or nine days of instruction from the original calendar scheduling 180 such days. Thus, prior to the adoption of the modified calendar, gas-fired schools could anticipate offering only 169 pupil instruction days and nongas-fired schools would be offering only 171 days. The addition of five days of instruction increased the total number of pupil days to 174 and 176 respectively. Such figures are well below the 180 days of pupil instruction agreed upon in the collective bargaining agreement and scheduled in the initial calendar and may be characterized as only good faith efforts to reach the 177 days suggested by the Act. It cannot be said, despite the Union's efforts to do so, that the modified calendar "extends the num-

ber of days [of instruction] provided for in the original school calendar'' and, thus, the exception created in subsection (b) is not applicable. The Act precludes the type of double compensation for school days lost and subsequently rescheduled as a result of the weather emergency which the arbitrator found was otherwise mandated by the terms of the collective bargaining agreement. When such an inconsistency exists, the arbitration award must fall. *Allegheny Valley School District v. Allegheny Valley Educational Association*, 25 Pa. Commonwealth Ct. 559, 360 A.2d 762 (1976). Therefore, we will affirm the order of the lower court setting aside the arbitration award.

ORDER

Now, September 5, 1979, the order of the Court of Common Pleas of Lackawanna County is hereby affirmed.

DISSENTING OPINION BY JUDGE CRAIG:

I must respectfully dissent.

Whether the Act of June 1, 1977 (Act), P.L. 4, 24 P.S. §15-1501.1, is read with or without the words inserted by the majority opinion, the arbitrator's award is not in conflict with the Act.

The majority apparently accepts the arbitrator's interpretation of the collective bargaining agreement. As well summarized by the majority: "The arbitrator concluded that the extension of the school year was not required at least to the extent that two teacher workdays could have been converted to pupil instruction days." That was the basis for his award of two days' pay.

First, let us accept the majority's reading of the exception in Section 1501.1(b) of the Act, which allows additional pay when, as the majority put it, "the modified calendar 'extends the number of days [of instruction] provided for in the original school calendar.' "

The arbitrator's decision did not go beyond that; he simply found that the modified calendar indeed "extends the number of days [of instruction] provided for in the original school calendar" by the addition of two days of instruction; as stated, no such extension would have been required if two of the teacher workdays, already in the original school calendar, had simply been converted.

Secondly, moreover, it is difficult to find any warrant for reading the statutory exception differently from its plain language, which expressly allows payment for an extension of "the number of days provided for in the original school calendar." The majority's interpretation reverses the meaning of that phrase, by reading it as if it said "the number of days provided for pupil instruction, not the number of days provided for in the original school calendar."

There is no ambiguity in the literal words of the statutory exception and therefore no need for interpretation by interpolating restrictive terms. According to 1 Pa. C.S. §1921(b):

> When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.[1]

It is hard to say that "the number of days provided for in the original school calendar" does not mean what it says, the numerical sum of the days in the school calendar, which was indisputably 185.

There is no inconsistency between the last sentence of Section 1501.1(a) of the Act and the first sentence of its Section 1501.1(b). Both say that there shall be no additional compensation; being thus in pari

---

[1] In 1 Pa. C.S. §1921(b), the term "pretext" is strange and inappropriate. The legislative concern or "spirit" of the Act is the straightforward *basis* for the majority opinion's insertion, not a "pretext" for it.

materia, those two sentences are to be read together, under 1 Pa. C.S. §1932, and, so read, the above exception applies to, and modifies, both sentences.

With the "number of days provided for in the original school calendar" being 185, and the teachers being committed by the modified calendar to a total of 189 days creditable to them (according to the school district's agreed definition of the school calendar for pay purposes), the arbitrator had an arguable basis for awarding four days' pay instead of just two.

However, limiting his reach in a manner akin to the restriction proposed by the majority, the arbitrator made his award only for the two instructional days' extension. I would affirm that award, as not in conflict with the Act's words, or even with the most restrictive view of its intent.

Judge BLATT joins in this dissent.