597 A.2d 229

**MOSHANNON VALLEY SCHOOL DISTRICT, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 1, 1991.

Decided Sept. 4, 1991.

David P. Andrews, for petitioner.

Peter Lassi, for respondent.

William A. Hebe, for intervenor, Moshannon Valley Educ. Ass'n.

Before PALLADINO and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Moshannon Valley School District (District) petitions for review of the order of the Pennsylvania Labor Relations Board (Board), dated June 26, 1990. The Board made

absolute and final a Proposed Decision and Order of the hearing examiner and dismissed the District's exceptions thereto. This appeal followed. We affirm the Board.

A collective bargaining agreement between the District and the Moshannon Valley Education Association (Union) was in effect for the period of July 1, 1988 to June 30, 1991. It provided for the resolution of grievances in Article VII by way of a three (3) level grievance procedure followed by arbitration; the procedure consisted of the employee committee presenting a grievance to the school principal who is the employee's immediate supervisor (level 1), then, if not resolved satisfactorily, to the superintendent of the District (level 2), then if not resolved, to the Board of Directors of the District (level 3), and, if not resolved, to binding arbitration. (R.R. pp. 40a–42a.

The agreement further provided as follows:

III. *WAIVERS*

The parties to this Agreement mutually agree that all negotiable items have been discussed during the negotiations leading to this Agreement; that no additional negotiations on this Agreement will be conducted on any matter, whether contained herein or not, during the life of this Agreement and that this Agreement, together with the Public School Code of the Commonwealth of Pennsylvania, is and shall be the complete agreement between the parties hereto.

.     .     .     .     .

V. *JOB SECURITY AND JOB PROGRESSION*

The Public School Code of the Commonwealth of Pennsylvania, as amended, includes certain provisions relating to job security, certification for positions, and other regulatory provisions associated with the various classes of employees covered by this Agreement. The parties hereto mutually agree that such provisions of the Public School Code, as amended, together with this Agreement, represent their complete agreement, *and that the provisions of the Public School Code, together with this Agreement, shall govern the manner in*

*which all practices of job security, job progression or reduction in force* shall be affected with respect to all the employees of Moshannon Valley School District. (R.R. pp. 36a, 38a) (Emphasis ours.)

Bette Jill Deluccia (Deluccia), a tenured employee and member of the bargaining unit, was suspended, due to a decline in the pupil enrollment, by the District on June 21, 1989 pursuant to Section 1124 of the Public School Code of 1949,[1] 24 P.S. § 11–1124. In accordance with the collective bargaining agreement, a Grievance Report was filed on her behalf on June 22, 1989 with her first level supervisor, Thomas Snyder (Snyder). Deluccia alleged that her suspension violated Article I C and Article V of the collective bargaining agreement.[2] Deluccia sought reinstatement to her former position without loss of salary or benefits.

On June 23, 1989, Snyder filed a Grievance Disposition Report, as follows:

It is the opinion of this First Level Supervisor that the above Alleged Grievance is valid.

The Moshannon Valley School District should immediately apply the requested remedy. Mrs. Deluccia should be reinstated to her former position without loss of salary or benefits with interest.

(R.R. p. 6a).

Thereafter, neither party proceeded to the second level of the grievance procedure within the time prescribed. The District failed to reinstate Deluccia to her former position pursuant to Snyder's determination. This failure to reinstate resulted in a charge of unfair labor practices against the District by the Union before the Pennsylvania Labor Relations Board. The Union alleged that the District did

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

   Section 1124, 24 P.S. § 11–1124, sets forth four separate grounds for suspending professional employees; one of which, at Section 1124(1), is "substantial decrease in pupil enrollment in the school district."

2. Article I C of the collective bargaining agreement sets forth that the parties agree to abide by the provisions of the Public Employe Relations Act; Article V is set forth, supra, as herein relevant.

not take an appeal from the determination of Snyder and therefore the grievance had been resolved. The Union sought an order directing the District to comply with the level one resolution of the grievance and to reinstate Deluccia.

A hearing was scheduled, but was cancelled when the District and the Union agreed to submit the matter on a stipulation of facts as follows:

The Complainant, Moshannon Valley Education Association, and Respondent, Moshannon Valley School District, hereby agree that the following evidence shall be solely considered by the Pennsylvania Labor Relations Board, along with Briefs submitted by counsel, in deciding the above-captioned charge:

1. The Collective Bargaining Agreement between the parties.

2. The Grievance Report dated June 22, 1989.

3. The Grievance Disposition Report signed by Thomas Snyder, dated June 23, 1989.

4. The following Stipulation of Facts agreed by both parties:

"Thomas Snyder was not told either by the Board of School Directors of the Moshannon Valley School District or the Superintendent of Schools of the Moshannon Valley School District To give the response to the Grievance as stated in the Grievance Disposition Report of June 23, 1989."

(R.R. p. 30a).

The District's position was that the question of whether a binding grievance settlement exists is a procedural issue reserved for an arbitrator's resolution. The District alleged that the first level supervisor did not have the authority to sustain the grievance or to grant the remedy requested and that he lacked the authority to bind the District on a decision to hire or fire an employee. The District asserted that no resolution of the grievance had occurred and that the issue could only be resolved by arbitration.

On February 26, 1990, the hearing examiner issued a Proposed Decision and Order in which he concluded that the District committed unfair practices in violation of Sections 1201(a)(1) and 1201(a)(5) of the Public Employe Relations Act[3] (PERA). The order stated, as relevant:

[T]hat the District shall:

.    .    .    .    .

2. Cease and desist from refusing to bargain collectively in good faith with the employe organization which is the exclusive representative of employes in an appropriate unit, including but not limited to discussing of grievances with the exclusive representative.

3. Take the following affirmative action:

(a) Consummate the settlement agreement entered into by the grievant's first level supervisor, Mr. Snyder.

.    .    .    .    .

(R.R. pp. 72a–73a).

The District filed timely exceptions. Upon review, the Board rejected stipulation 4,[4] dismissed the District's exceptions, and made the Proposed Decision and Order absolute and final.

**3.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

Section 1201, 43 P.S. § 1101–1201, provides in relevant part:
(a) Public employers, their agents or representatives are prohibited from:

.    .    .    .    .

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

**4.** The Board made the following Finding of Fact in place of the rejected stipulation 4, which is not challenged here by the District.

4. That on June 22, 1989, a grievance was filed in which the Association and Ms. Deluccia grieved the suspension of Ms. Deluccia. The grievance was submitted to the grievant's first level supervisor Thomas Snyder. The remedy requested was reinstatement to former position without loss of salary or benefits with interest. (Joint Exhibit 1)
(R.R. p. 83a).

The District argues that the response by Snyder, the first level supervisor, was not a resolution of the grievance, but instead was (1) a recommendation, (2) did not preempt the authority of the District to suspend a professional employee pursuant to Section 1124 of the School Code, and (3) for the first level supervisor's response to be binding required determination by an arbitrator.

■ Our scope of review is limited to a determination of whether the factual findings of the Labor Relations Board are supported by substantial evidence and whether its legal conclusions are reasonable, and not arbitrary, capricious or incorrect as a matter of law. *Roderick v. Pennsylvania Labor Relations Board*, 86 Pa.Commonwealth Ct. 278, 484 A.2d 841 (1984).

■ The District, although seemingly raising three separate issues, in fact only raises one, i.e., may a collective bargaining agreement provide for the final resolution of suspension of professional employees under the Public School Code of 1949? This issue, under substantially the same facts, was determined adversely to the District by our Supreme Court in *Rylke v. Portage Area School District*, 473 Pa. 481, 375 A.2d 692 (1977) and is controlling here.

In *Rylke*, a professional employee was suspended at the end of the 1973 school year; she was a member of the bargaining unit,[5] which had negotiated a bargaining agreement covering the period July 1, 1971 to June 30, 1973 with the Portage Area School District. The agreement had a four-step grievance procedure with binding arbitration as the final step. The agreement also contained provisions relating to job security.

Rylke filed a grievance alleging that the Portage School District failed to comply with procedures mandated by the collective bargaining agreement in suspending Rylke; that, although the first three steps were followed, the Portage School District refused to submit to binding arbitration.

5. Portage Area Education Association

Rylke brought an action in mandamus seeking to have the Portage School District submit the dispute to binding arbitration. The trial court dismissed the complaint on preliminary objections, and this Court sustained the trial court's dismissal.[6]

The Supreme Court, in reversing this Court and the trial court, wrote:

The resolution of the instant dispute requires a three-step analysis. We must first determine what both parties intended to accomplish by incorporating certain sections of the Public School Code of 1949 (the School Code) into the collective bargaining agreement. Once the intent is determined, we must see if that intent can lawfully be effected....

The School Code gives a special status to professional employees, i.e. tenured teachers. While a tenured teacher may always be dismissed for cause, 24 P.S. § 11–1122, the School Code limits the causes for which a tenured teacher may be suspended....

Article VIII of the Collective Bargaining Agreement in the instant case provides:

"The Pennsylvania School Code includes certain job security provisions, certification, and other regulatory provisions associated with various classes of employes. The parties hereby aver that such provisions of the School Code represent their complete agreement, and that said provisions shall govern the manner in which the job security, job progression, and reduction in force practices shall be effected with respect to members of the bargaining unit.

"In the event that additional provisions not inconsistent or in conflict with those enumerated in the School Code shall be agreed upon by the parties with respect to job security, job progression, and reduction in force, such provisions shall be made a part of Appendix C which shall be made part of this agreement."

6. *Rylke v. Portage Schools,* 20 Pa.Commonwealth Ct. 158, 341 A.2d 233 (1975).

The above summarized sections of the School Code were thus incorporated into the collective bargaining agreement.

The agreement further provides:

"The parties agree that grievances which arise out of the interpretation of this agreement, shall be resolved in accordance with the grievance procedure described in Appendix D attached hereto and made part of this agreement."

Reading the two above-quoted passages together, we believe the parties incorporated the relevant sections of the School Code into the agreement to allow, *inter alia,* an arbitrator to decide whether the School District has complied with those sections in suspending professional employees.

. . . . .

While the contract itself has no limitations on which issues can be arbitrated, appellee claims that the Public Employees Relations Act (PERA) prohibits the submission of the instant dispute to arbitration.

Section 703 of PERA provides:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters." 43 P.S. § 1101.703.

Appellee argues that since the School Code provides for suspension of professional employees but says nothing about arbitrating the propriety of suspensions, allowing arbitration would be "the implementation of a provision inconsistent with a statute enacted by the General Assembly." We do not agree.

First, and most important, PERA commands that "Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining

agreement is *mandatory.*"  43 P.S. § 1101.903 (Emphasis supplied.)  Furthermore, two recent decisions of this court make it clear that the instant dispute may be arbitrated.

In *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975), this court was asked to interpret § 701 of PERA in light of limitations in §§ 702 and 703.  These three sections provide:

"Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession."  43 P.S. § 1101.701.

"Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel.  Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives."  43 P.S. § 1101.702.

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Penn-

sylvania or the provisions of municipal home rule charters." 43 P.S. § 1101.703.

In discussing the relationship between §§ 701 and 702, the Court stated in *State College*, 461 Pa. at 507, [337 A.2d] at page 268:

"Thus we hold that where an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply because it may touch upon basic policy. It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole. If it is determined that the matter is one of inherent managerial policy but does affect wages, hours and terms and conditions of employment, the public employer shall be required to meet and discuss such subjects upon request by the public employe's representative pursuant to section 702."

In the instant case, we believe that arbitrating the propriety of an individual's suspension has a substantial impact on "wages, hours and terms and conditions of employment." All appellants ask is that an arbitrator be allowed to decide if the School Code has been followed. Hence, § 702 does not prohibit bargaining on the dispute in the instant case.

In *State College* the court further stated, 461 Pa. at 510, [337 A.2d] at page 270:

"We therefore conclude that items bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions explicitly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment."

We can find nothing which prohibits the submitting of the instant dispute to arbitration. PERA provides, on the

contrary, that collective bargaining is mandatory. See 43 P.S. § 1101.903. We thus hold that the submission of suspensions to arbitration is bargainable under PERA. (473 Pa. at 484–490, 375 A.2d at 693–696) (Footnotes omitted.)

Essentially, the District argues here that which was settled by entering into a collective bargaining agreement between itself and the Union, a provision of which agreement provided for grievance procedures and, if not resolved thereby, for arbitration. The issue is not whether Snyder (the first level supervisor) had the authority to decide whether Deluccia could be suspended, but rather whether the disposition of the grievance herein is binding on the District. Thus, in accordance with *Rylke*, we find that the within grievance, being properly submitted to Snyder and there being no appeal to the next level, was resolved and is final and binding pursuant to the collective bargaining agreement.[7]

The District does not raise any question as to the factual findings but only raises legal issues relating to the collective bargaining agreement vis-a-vis PERA. We find that the Board's conclusions of law are reasonable in view of the legislative mandates and the decisions of our Supreme Court.

## ORDER

AND NOW, this 4th day of September, 1991, the order of the Pennsylvania Labor Relations Board, dated June 26, 1990, is affirmed.

---

**7.** The District's opposition to the first level supervisor's authority in matters of employment should have been advanced, argued for, and negotiated at the time of collective bargaining. This also was the basis of the Board in sustaining the Proposed Decision and Order of the hearing examiner.