555 A.2d 292

Upper Merion Area School District, Appellant *v.* Upper Merion Area Education Association, Appellee.

Argued December 16, 1988, before Judges PALLADINO and SMITH, and Senior Judge KALISH, sitting as a panel of three.

*Richard J. Tompkins*, with him, *Francis P. O'Hara, Fox, Differ, Callahan, Ulrich & O'Hara*, for appellant.

*A. Martin Herring, A. Martin Herring & Associates*, for appellee.

OPINION BY JUDGE PALLADINO, March 8, 1989:

Upper Merion Area School District (School District) appeals an order of the Court of Common Pleas of Montgomery County (trial court) dismissing its petition for review of an arbitrator's award entered in favor of Upper Merion Education Association (Union). We affirm.

The School District and the Union were parties to a collective bargaining agreement which incorporated the provisions of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 to 27-2702, and provided for the arbitration of grievances.[1] John Adiletto, Jr. (Grievant) was employed as a temporary professional employee by the School District, beginning on December 4, 1979. On June 2, 1980, the Board of School Directors of the School District (Board) voted to reduce the size of the teaching staff for the 1980-1981 school year because of declining student enrollment.[2] At the Board's July 28, 1980 meeting, the Board voted to suspend certain teach-

---

[1] Article XIX, section A of the Collective Bargaining Agreement provides that an alleged violation, misinterpretation, or misapplication of the terms and conditions of employment as contained in existing state laws, existing school policy, or any matter incorporated in the agreement constitutes a "grievance."

[2] Section 1124 of the Public School Code permits a board of school directors to suspend the necessary number of professional employees because of a substantial decrease in pupil enrollment in the school district. 24 P.S. §11-1124.

ers, including Grievant. By letter dated August 7, 1980, Grievant was advised of the suspension.

Grievant's suspension ended on September 7, 1982, at which time he was again employed as a temporary professional. On May 23, 1983, the Board again determined to reduce the size of the teaching staff because of declining student enrollment. On July 25, 1983, the Board voted to suspend certain teachers, including Grievant. By letter dated July 28, 1983, Grievant was notified of the suspension.

The minutes of the two Board meetings did not indicate whether the Board awarded continuing seniority to Grievant during the periods of his suspension. However, both of the letters which Grievant received from the president of the Board, notifying him of the respective suspensions, stated that his seniority would continue to accrue during the periods of suspension.

In September of 1984, Grievant once again became employed as a temporary professional. By letter dated February 25, 1985, Grievant was advised that he had been awarded tenure and was therefore no longer a "temporary" professional. By letter dated August 15, 1985, the School District superintendent notified Grievant that his seniority had been inaccurately calculated to include those periods when he had been suspended. Accordingly, the School District stated that it was reducing his seniority from 5.7 years to 2.7 years.

The Union thereafter filed a grievance on behalf of Grievant, contending that the School District unilaterally took away seniority which it had previously granted to Grievant in violation of the collective bargaining agreement. The grievance ultimately proceeded to arbitration; the arbitrator sustained the grievance.[3] The arbitrator

---

[3] The arbitrator framed the issues presented as follows: "Whether the Board of School Directors could and did give the

determined that nothing contained in the Public School Code prohibited the accumulation of seniority by a temporary professional employee. Further, the arbitrator concluded that the School District violated the collective bargaining agreement by unilaterally taking away the seniority which it had granted to Grievant. The School District appealed to the trial court, which dismissed its petition for review by order dated September 25, 1987.

On appeal to this court, the School District asserts that the arbitrator improperly interpreted section 1125.1 of the Public School Code, 24 P.S. §1125.1, alleging that continuing seniority may be given *only* to professional employees and *not* to temporary professional employees. The School District also contends that, assuming the arbitrator correctly determined that the School District *could* grant continuing seniority to temporary professional employees, there was no evidence to establish that the School District actually did so.

We note that the scope of review of an arbitrator's decision is limited and the decision will not be overturned if it draws its essence from the collective bargaining agreement. *Mifflinburg Area Education Association v. Mifflinburg Area School District*, 118 Pa. Commonwealth Ct. 328, 545 A.2d 419 (1988). The Pennsylvania Supreme Court has held that the "essence test" requires a determination of whether the terms of the collective bargaining agreement encompass the subject matter of the dispute. *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981). If the subject matter of the dispute *is* encompassed within the terms of the agreement, the validity of the arbitrator's decision is not a

---

grievant the right to continue to acquire seniority during the periods of his suspension as a Temporary Professional Employee? If not, what shall the remedy be?" Arbitrator's Award at 2.

proper matter for judicial review.[4] *Id.* at 520-21, 424 A.2d at 1312-13; *see Wilkes-Barre Area Educational Association v. Wilkes-Barre Area School District*, 113 Pa. Commonwealth Ct. 492, 538 A.2d 81 (1988). In order to determine whether an arbitrator's award draws its essence from the terms of the collective bargaining agreement, the award must be examined in light of the language of the agreement, its context, and any other indicia of the parties' intention. *McKeesport Area School District v. McKeesport Area Education Association*, 56 Pa. Commonwealth Ct. 224, 424 A.2d 979 (1981).

The School District first asserts that the arbitrator improperly interpreted section 1125.1 of the Public School Code.[5] Section 1125.1 provides in pertinent part:

> Professional employees shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment. Approved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue to accrue during suspension and all approved leaves of absence.

---

[4] However, a court reviewing an arbitration award shall modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury, the court would have entered a different judgment or judgment notwithstanding the verdict. 42 Pa. C. S. §7302(d)(2).

[5] The School District does not argue that the question of a change in an employee's seniority status is not encompassed within the terms of the collective bargaining agreement. As noted in footnote 2, Article XIX, section A of the collective bargaining agreement provides that an alleged violation, misinterpretation, or misapplication of the terms and conditions of employment as contained in existing state laws, existing school policy, or any matters incorporated in the agreement constitutes a "grievance" subject to the agreement's level three arbitration procedure.

24 P.S. §1125.1(a). The School District argues that because the Public School Code defines "professional employee" and "temporary professional employee" differently, *see* section 1101 of Public School Code, 24 P.S. §11-1101, section 1125.1 applies only to professional employees and not to temporary professional employees. The School District contends that, pursuant to section 1125.1, it could not grant continuing seniority to Grievant. Accordingly, the School District asserts that the arbitrator's award conflicts with a fundamental policy of the legislature, namely, that professional employees should receive greater benefits and protection under the Public School Code than temporary professional employees.

The arbitrator determined that section 1125.1 of the Public School Code does not prohibit the accrual of seniority by a non-tenured teacher. The arbitrator noted the Grievant's employment contract with the School District specifically provided that Grievant, as a temporary employee, would be viewed for all purposes, except tenure status, as a full-time employee and would enjoy all of the rights and privileges of regular full-time employees. Finally, the arbitrator concluded that no evidence had been presented to demonstrate that Grievant had unjustly benefited from the accumulation of seniority, stating "[i]f all those in a similar position to his continued to accumulate seniority while on suspension, their relationships would remain the same with respect to each other." Arbitrator's Award at 7.

We hold that the arbitrator's conclusion that Grievant could be granted continuing seniority by the School District rationally derives its essence from the terms of the parties' agreement and is not violative of or inconsistent with section 1125.1 of the Public School Code. So long as the arbitrator's interpretation was reasonable, this court will not intrude into the domain of the arbitrator simply

because its interpretation might differ from that of the arbitrator. *See School District of Duquesne v. Duquesne Education Association*, 99 Pa. Commonwealth Ct. 63, 512 A.2d 103 (1986).

The School District also contends that, assuming it could grant continuing seniority to Grievant, it did not in fact do so in this case. The School District asserts that the minutes of the Board's meetings do not reflect any vote or intention on the part of the School District to grant continuing seniority to Grievant during the periods of suspension. Further, the School District, alleges that the letters from the president of the Board to Grievant, advising him that his seniority would continue to accrue, were both inaccurate and insufficient to bind the Board.

In considering the School District's contentions, the arbitrator noted that the Board's minutes were silent as to whether the Board was granting or not granting continuing seniority to Grievant or to any other temporary professional employee during the suspension periods. The arbitrator also stated that "[r]escission or revision for mistakes are severely limited. No one was unjustly benefited or adversely hurt by the mistakes over the past few years." Arbitrator's Award at 8. The arbitrator concluded that the School District could not unilaterally take away the seniority which it had previously granted to Grievant.

We have frequently held that the fact that the arbitrator may have failed to properly perceive the question presented or erroneously resolved it does not provide justification for judicial interference. *Central Susquehanna Intermediate Unit Education Association v. Central Susquehanna Intermediate Unit No. 16*, 74 Pa. Commonwealth Ct. 248, 459 A.2d 889 (1983). "An arbitrator must be given a certain amount of flexibility to reach an amicable solution and should not be limited in his problem solving to the exact language of the grievance." *Mc-*

*Keesport Area School District*, 56 Pa. Commonwealth Ct. at 229, 424 A.2d at 983.

Accordingly, we affirm.

ORDER

AND NOW, March 8, 1989, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is affirmed.