625 A.2d 159

**NORTH STAR SCHOOL DISTRICT, Appellant,**

v.

**NORTH STAR EDUCATION ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued March 1, 1993.

Decided May 3, 1993.

Reargument Denied June 18, 1993.

Daniel W. Rullo, for appellant.

William K. Eckel, for appellee.

Before COLINS and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

North Star School District (District) appeals from the September 23, 1992 order of the Court of Common Pleas of Somerset County (trial court) dismissing the District's appeal from an arbitration award in a grievance dispute between the District and North Star Education Association (Association). We reverse.

The ultimate issue here is whether the trial court erred in affirming the decision of a contract grievance arbitrator. The arbitrator had overturned the North Star School Board's (Board) decision to suspend two professional employees because of a decrease in pupil enrollment and curtailment of educational programs pursuant to Sections 1124(1) and (2) of the Public School Code (Code).[1]

■ In order to decide that question, we must examine the collective bargaining agreement (CBA) and determine whether the arbitrator exceeded his authority under the agreement. To do this, we must examine the "fundamental jurisdiction of the arbitrator and his power to implement a remedy." *Midland Borough School District v. Midland Education Association, PSEA,* 532 Pa. 530, 616 A.2d 633 (1992). If the arbitrator does have such power, then we must determine if his decision to overrule the Board drew its "essence" from the CBA. Our inquiry in this regard is confined to a determination of whether the arbitrator's decision could rationally be derived from the CBA, viewed in light of its language, its context and any other indicia of the parties' intention. *Midland; Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989).

However, as our Supreme Court stated in *Midland,* quoting from one of the Steelworker's Trilogy cases:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of

1. Act of March 10, 1949, P.L. 30 *as amended,* 24 P.S. §§ 11–1124(1) and (2).

course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Midland,* 532 Pa. at 534, 616 A.2d at 635 (quoting *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). Also, under the Uniform Arbitration Act, 42 Pa. C.S. § 7302(d)(2), and *Upper Merion School District v. Upper Merion Area Education Association,* 124 Pa.Commonwealth Ct. 81, 555 A.2d 292 (1989), a court is required to modify or correct an award where it is "contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict." Under 42 Pa.C.S. § 7314(a)(1)(iii) upon application of a party we must vacate an award if an arbitrator exceeded his powers.

The relevant facts are as follows. Relying upon Sections 1124(1) and (2) of the Code, the Board sought the permission of the Department of Education (Department) to suspend three teachers prior to the commencement of the 1991–1992 school year. Sections 1124(1) and (2) provide as follows:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) Substantial decrease in pupil enrollment in the school district;

(2) Curtailment of alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments. . . .

24 P.S. §§ 11–1124(1) and (2).

Prior to implementing the suspensions, the Board calculated the District's decline in enrollment and requested that the Department approve its proposal to alter or curtail its Music,

Business and Home Economics programs. The Department gave its approval in an April 12, 1992 letter, but made it clear that it was approving only the curtailment or alteration of the three programs and not the furloughing of specific employees. R.R. p. 19.

The District suspended Dawna Croft, the least senior music teacher; Karen Conrad, the least senior business education teacher; and Bonnie Ray, the least senior home economics teacher (collectively, Grievants). These suspensions were made pursuant to Section 1125.1(a) of the Code, which, in pertinent part, provides as follows:

> (a) Professional employes shall be suspended under section 1124 (relating to causes of suspension) in inverse order of seniority within the school entity of current employment.

24 P.S. § 11–1125.1(a) (footnote omitted).

Subsequently, the Association filed a grievance on behalf of the Grievants pursuant to Section X of the Agreement, which states as follows:

> The best interest of the general public and of the school children which both the Employer and employes serve dictate that grievances be reconciled and disposed of as expeditiously as possible. Therefore, the parties hereto agree that grievances *which arise out of the interpretation of the terms of this agreement* shall be resolved in accordance with the following five step grievance procedure....

Section X of the Agreement (emphasis added).

In their grievance, the Grievants alleged that "[t]hese furloughs are improper and unwarranted in all cases. Additionally, in the case of Dawna Croft [the music teacher] it is an act of reprisal against her." R.R. 18a. Further, they claimed a violation of Article VII, Section (1) of the Agreement, "Job Security and Job Progression," which provides as follows:

> The "Public School Code of 1949" of the Commonwealth of Pennsylvania, as amended, includes certain job security provisions associated with various classes of professional employees. The parties hereto do hereby agree that said provisions *shall govern the manner in which* the job securi-

ty, job progression and *reduction in force practices shall be effected* with respect to members of the Bargaining Unit. Article VII, Section (1) of the Agreement (emphasis added).

After unsuccessful attempts to resolve the dispute using the initial steps of the grievance procedures set forth in Article X of the Agreement, the parties submitted it to binding arbitration as mandated by the fifth step of the grievance procedure [2] and Section 903 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.903 (Act 195). There is no doubt that this was the proper procedural step in the first instance. *North Star School District v. Pennsylvania Labor Relations Board,* 35 Pa.Commonwealth Ct. 429, 386 A.2d 1059 (1978). Pursuant to Section 903 of Act 195, arbitration of disputes or grievances "arising out of the interpretation of the provisions of a collective bargaining agreement" is mandatory. 43 P.S. § 1101–903.

Section 702 of Act 195, however, provides as follows:

> Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel.

43 P.S. § 1101.702.

As a result of the parties' submission of their dispute to the arbitrator, he rendered a December 19, 1991, opinion and award. Therein, he concluded initially that "there is no contractual basis for limiting the district's ability to furlough

---

**2.** Step 5:

If the action in Step 4 fails to resolve the grievance to the satisfaction of the affected parties, and the grievance is required by Section 903 of Act 195 to go to binding arbitration for resolution of such grievance, the grievance shall be referred to binding arbitration as provided in Section 903 of Act 195. Both parties shall be bound to the decision obtained through arbitration except where enabling legislation is required, enacted as provided in Section 901 of Act 195. *If the grievance fails to meet the criteria of Section 903 of Act 195, the decision of the Board of Directors in Step 4 referred to above shall be final.* (Emphasis added).

teachers under the provisions of Section 1124." R.R. 10a. However, he then proceeded to analyze the District's enrollment decline over a three year period (instead of the five year period used by the District). He concluded that the District had violated Sections 1124(1) and (2) of the Code when suspending Bonnie Ray and Dawna Croft, the home economics and music teachers respectively, but that the suspension of Karen Conrad, the business education teacher, was proper. The District appealed his decision to the trial court.

The trial court noted that the arbitrator "did not ignore the [Department's] approval, but, in fact, went behind it and made an independent review of the evidence to determine whether the criteria set forth in Section 1124(2) were met." Further, the court determined that "the arbitrator's findings with respect to the alleged decrease [in enrollment], his calculations, [and] his choice of time period over which the comparison was made, are ... rationally related to the Agreement and its incorporation of the job security provisions of the School Code." Trial Court's September 23, 1992 Opinion at 10. Thus, the trial court concluded that "the arbitration award can rationally be derived from the collective bargaining agreement and that the agreement encompasses the subject matter of the dispute." *Id.* at 12.

■ With regard to the question of whether the arbitrator had the authority under the agreement to determine if the Board could suspend three teachers, the Association argues that our Supreme Court has already decided the arbitrability of the propriety of suspensions in *Rylke v. Portage Area School District*, 473 Pa. 481, 375 A.2d 692 (1977). In *Rylke,* however, the issue was whether a suspension should have been submitted to arbitration in the first instance. There, furloughed professional employees filed an action in mandamus to have their Section 1124 suspensions submitted to an arbitrator pursuant to their collective bargaining agreement. They alleged that the district had not suspended them in compliance with the procedures mandated by their agreement. That

agreement, which incorporated the Code, contained a job security provision almost identical to the one at issue here.[3]

Our Supreme Court held that, since "the propriety of an individual's suspension has a substantial impact on 'wages, hours and terms and conditions of employment,'"[4] it is properly the subject of arbitration under Act 195. The Court, however, did not elaborate on what it meant by the "propriety" of suspensions. Also, as the grievance had not yet gone to arbitration, there was, of course, no allegation that the arbitrator had substituted his judgment for the legislatively mandated decision-makers. Thus, our decision that the initial determination of whether to suspend is not arbitrable is not in conflict with the Court's decision in *Rylke*. Our case presents a different issue.[5] All parties agree here that the grievants had a right to have arbitration on the *manner* of the lay-offs and so do we. *See Midland*, 532 Pa. at ——, 616 A.2d at 635.

In another case involving Section 1124 suspensions due to declining enrollments, the parties had agreed that the Code was to govern "the manner in which the job security, job progression, and reduction in force practice shall be effected...." *Ridley School District v. Ridley Education Association*, 84 Pa.Commonwealth Ct. 117, 121, 479 A.2d 641, 643 (1984).

**3.** Article VIII of their agreement provided as follows:

> The Pennsylvania School Code includes certain job security provisions, certification, and other regulatory provisions associated with various classes of employes. The parties hereby aver that such provisions of the School Code represent their complete agreement, and that said provisions shall govern the *manner* in which the job security, job progression, and reduction in force practices shall be effected with respect to members of the bargaining unit.

*Rylke*, 473 Pa. at 485, 375 A.2d at 694 (emphasis added).

**4.** *Id.* at 489, 375 A.2d at 696.

**5.** In a recent case, this Court acknowledged that we were bound by the Supreme Court's arbitrability determination in *Rylke*. *Moshannon Valley School District v. Pennsylvania Labor Relations Board*, 142 Pa.Commonwealth Ct. 270, 597 A.2d 229 (1991), *petition for allowance of appeal denied*, 530 Pa. 662, 609 A.2d 170 (1992). In *Moshannon Valley*, however, we did not address the issue presented for our review in the case *sub judice*.

The District argues that Section 1124 of the Code does not provide that the arbitrator may decide the basis for initiating the suspensions because the legislature specifically reserved that function to the Board. We agree.

One of the issues in *Ridley* concerned the propriety of the arbitrator determining whether one of the employees was entitled to sabbatical leave. The arbitrator interpreted Section 1166 of the Code,[6] which addresses sabbaticals, in favor of the teacher. Significantly, the arbitrator considered whether the individual teacher was entitled to a sabbatical, *not* whether the board had erred in determining declining pupil enrollment. We held that, since the arbitrator's interpretation was reasonable, we were compelled to affirm the trial court's decision affirming that of the arbitrator.

As demonstrated in *Ridley*, an arbitrator is not without jurisdiction when a bargaining unit member is suspended. As the District concedes, issues such as the proper individual to be suspended as related to his seniority, for example, fall within the bargained for jurisdiction of the arbitrator. *See* Section 1125.1(a) of the Code, 24 P.S. § 11-1125.1(a). A seniority issue relates to the "manner" in which furloughs are to be effected, not whether furloughs should be effected initially.

In *Neshaminy Federation of Teachers v. Neshaminy School District*, 501 Pa. 534, 462 A.2d 629 (1983), our Supreme Court held that, because Section 4-1 of Neshaminy's collective bargaining agreement provided that the Code would supersede any provisions in their agreement, dismissals would be governed by the relevant Code sections. The Court decided that "the Board could not properly agree to pursue dismissals by a non-statutory method." *Id.* at 548, 462 A.2d at 636. Thus, the Court concluded that the discharge did not give rise to a grievance under the parties' agreement.

Just as the parties in *Neshaminy* agreed to give explicit preference to the act of the legislature, the parties here agreed in Article VII, Section (1) of the CBA that the provi-

6. 24 P.S. § 11-1166.

sions of the Code would govern the manner in which "reduction in force practices shall be effected." Since the legislature provides that the Board, with the Department's approval when necessary, is to decide the basis for suspensions, only problems with the appropriate persons to be suspended under 24 P.S. § 11–1125.1 were properly the subject of grievances.

Further, we note that the legislature inserted no provision in Section 1124 of the Code permitting the parties to preempt any of the grounds for suspension by way of their collective bargaining agreement.[7] This is in direct contrast to Section 1125.1(e) of the Code, wherein the legislature provided that "[n]othing contained in section 1125.1(a) through (d) shall be construed to supersede or preempt any provisions of a collective bargaining agreement...." 24 P.S. § 11–1125.1(e).

The legislature's failure to provide a preemption provision in Section 1124, when it clearly knew how to do so, is indicative of its apparent satisfaction with affording the Board and the Department discretion to make the determination of whether suspensions are warranted.[8] Thus, the parties' incorporation here of the Code into Section (1) of their Agreement does not mean that the arbitrator was empowered here to reconsider issues concerning the "necessary number" of employees, whether there was a "substantial decrease in pupil enrollment", or whether an educational program should be altered. The Code entrusted these educational and budgetary concerns to the superintendent, to the school board and to the Department of Education.

What the parties bargained for was the arbitrator's determination as to the propriety of the manner in which the District

**7.** In *McKeesport Area School District v. Cicogna*, 125 Pa.Commonwealth Ct. 99, 558 A.2d 116 (1989), (a direct appeal from a board suspension) we acknowledged the exclusive nature of the four enumerated reasons for suspension contained in Section 1124.

**8.** In *Patton v. Republic Steel Corporation*, 342 Pa.Superior Ct. 101, 492 A.2d 411 (1985), the Superior Court held that it would not imply specific language in one section of a statute when the legislature had excluded it from another. Similarly, we will not imply language in Section 1124 of the Code when the legislature specifically included it in Section 1125.1(e).

conducted the furloughs. While the arbitrator was free to examine the furloughs in accordance with the seniority provisions of Section 1125.1 of the Code, he was not empowered either by the legislature or the parties in their Agreement to recalculate the Board's figures, to place itself in the Department's place and to reconsider the Board's request.

Accordingly, we conclude that incorporation of the Code into Section (1) of the Agreement did not rob the Department of its legislatively mandated discretion to make the initial determination of whether a furlough is necessary and place it into the lap of an arbitrator. In limited circumstances, such as where the legislature has empowered elected or appointed officials to make certain determinations, an arbitrator cannot usurp their legislatively sanctioned judgments and substitute one of his own.

This is not a case where a court has "intruded into the domain of the arbitrator simply because its interpretation might differ from that of the arbitrator." [9] This is a case where the arbitrator has reached outside of the four corners of the agreement into the domain of the Board and the Department and rendered what he felt was a more justiciable result.[10]

Thus, we find that the initial determination of the existence of a basis for the District's suspension of professional employees, as provided for in Section 1124 of the Code, is not arbitrable under the North Star CBA.[11] Accordingly, we

9. Our Court has recognized the general proposition that a court is precluded from disturbing an arbitrator's award simply because that court would have decided the case differently. *American Federation of State, County and Municipal Employees v. City of Reading*, 130 Pa.Commonwealth Ct. 575, 568 A.2d 1352 (1990); *Upper Merion Area School District v. Upper Merion Education Association*, 124 Pa.Commonwealth Ct. 81, 555 A.2d 292 (1989).

10. *See Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Education Association*, 520 Pa. 197, 553 A.2d 913 (1989), *affirming* 104 Pa.Commonwealth Ct. 191, 521 A.2d 965 (1987); and *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988).

11. We acknowledge that an arbitrator's determination of what is arbitrable is to be accorded great deference. *Mifflinburg Area Education Association v. Mifflinburg School District*, 118 Pa. Commonwealth Ct.

conclude that the arbitrator went too far in this case and should have restricted himself to an examination of the effect of the suspension on the specific individuals suspended.

Finally, the District has asked that we modify the "essence test" so as to preclude an arbitrator from interpreting statutes incorporated into collective bargaining agreements. However, we decline to do so. Our holding is a narrow one and we need not and do not reach this issue to resolve the case *sub judice.*

Accordingly, for the reasons stated, we reverse.

## ORDER

**AND NOW,** this 3rd day of May, 1993, we hereby reverse the order of the Court of Common Pleas of Somerset County dated September 23, 1992.

328, 545 A.2d 419 (1988); *Ridley School District v. Ridley Education Association,* 84 Pa.Commonwealth Ct. 117, 479 A.2d 641 (1984). This deference, however, is limited to matters appropriately made subject to arbitration under the collective bargaining agreement.