**AMBRIDGE AREA SCHOOL DISTRICT, Appellant,**

v.

**AMBRIDGE AREA EDUCATION ASSOCIATION, PSEA/NEA, JoAnn Harrington.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1995.
Decided Jan. 31, 1996.

Wayne S. Lipecky, for Appellant.

Todd C. Park, for Appellees.

Before SMITH, Judge, FRIEDMAN, Judge (P.), and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

The Ambridge Area School District (School District) appeals from an order of the Court of Common Pleas of Beaver County (trial court) which affirmed an arbitration award ruling that the School District improperly furloughed JoAnn Harrington, a professional employee in the School District, and directed the School District to return Harrington to her full-time teaching position with lost pay and benefits.

The School District hired Harrington for the 1988–89 school year to teach in a half-time position in the high school's business department. As a result of a bid and transfer of another teacher, Harrington was

placed in a full-time business teaching position for the 1991–92 school year. In a letter dated May 22, 1992, the School District notified Harrington that it was furloughing her for the 1992–93 school year pursuant to section 1124 of the Public School Code of 1949 (School Code),[1] "due to a substantial decline in student and course enrollment in the business department...." (R.R. at 10a.) The Ambridge Area Education Association (Association), Harrington's collective bargaining unit, filed a grievance on Harrington's behalf in accordance with section 9 of the parties' collective bargaining agreement (CBA),[2] challenging the furlough on grounds that it violated sections 11 and 13 of the CBA.

Section 11 of the CBA, entitled SUSPENSION OF EMPLOYEES, provides in pertinent part:

The Board agrees that *suspension* and reinstatements *of professional employees will be according to the PA. School Code of 1949,* as amended.

(R.R. at 23a) (emphasis added). Section 13 of the CBA is a just cause provision which states in pertinent part that "[n]o member of the bargaining unit shall be ... suspended ... without just cause." (R.R. at 24a.) The Association maintained that Harrington's furlough was improper because the School District could not establish a substantial decline in student enrollment within the meaning of section 1124 of the School Code, a provision expressly incorporated into the parties' CBA by virtue of the statutory savings clause in section 11.

The matter proceeded to arbitration and, at the arbitration hearing, the School District questioned the jurisdiction of the arbitrator to review whether there had been a substantial decline in pupil enrollment to justify Harrington's furlough. The School District ar-

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1124(1) and (2), which provides in relevant part as follows:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:
(1) Substantial decrease in pupil enrollment in the school district;
(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school

directors, approved by the Department of Public Instruction, as a result of substantial decline of class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;....

2. Section 9 of the CBA provides a four-level formal grievance procedure, culminating with binding arbitration. (R.R. at 21a–22a.)

gued that the function of deciding the *basis* for a teacher suspension rested solely with its School Board of Directors (School Board), and the only role for the arbitrator was to determine whether the proper individual had been furloughed.

The arbitrator ruled that he had authority to consider the basis for Harrington's furlough and, after hearing evidence on the matter, determined that the School District could not substantiate the decline in business course student enrollment. Therefore, the arbitrator entered an award sustaining the grievance and directing the School District to reinstate Harrington to her full-time position with lost pay and benefits. The School District filed a Petition to Review and Application to Vacate the Arbitration Award (Petition) with the trial court, again arguing that the arbitrator exceeded his authority in reviewing the basis for the furlough to overrule the School Board's decision. The trial court disagreed. It then dismissed the School District's Petition and affirmed the arbitrator's award.

 The School District now appeals to this court,[3] contending that the legislature specifically reserved the function of deciding the basis for a professional employee suspension to the School Board through section 1124 of the School Code, and the School Board could not relinquish this statutory duty through a collective bargaining agreement.

The School District relies on *North Star School District v. North Star Education Association*, 155 Pa.Cmwlth. 368, 625 A.2d 159 (1993), *appeal denied*, 537 Pa. 614, 641 A.2d 313 (1994), to support its position. In *North Star*, a school district appealed from an arbitrator's award overturning the school board's decision to suspend two teachers based on a decline in student enrollment and a curtail-

ment of educational programs pursuant to sections 1124(1) and (2) of the School Code. In their grievance, the suspended teachers alleged, *inter alia*, that their furloughs violated the job security and job progression section of the collective bargaining agreement between the teachers and the school district, which provided:

> The 'Public School Code of 1949' of the Commonwealth of Pennsylvania, as amended, includes certain job security provisions associated with various classes of professional employees. The parties hereto do hereby agree that said provisions *shall govern the manner in which* the job security, job progression and *reduction in force practices shall be effected* with respect to members of the Bargaining Unit.

*Id.* 625 A.2d at 161 (emphasis in original).

Following an analysis of the school district's decline in enrollment over three years, the arbitrator concluded that the school district violated sections 1124(1) and (2) of the School Code when suspending the teachers and directed that they be reinstated. The trial court upheld the award. Although noting that the arbitrator had conducted an independent review of the section 1124 criteria, the trial court concluded that the arbitration award could be rationally derived from the collective bargaining agreement by virtue of that agreement's incorporation of the School Code's job security provisions.

We reversed, reasoning that under the terms of the collective bargaining agreement in *North Star*, the arbitrator could inquire only into the "manner" by which the school district had suspended the teachers; that is, only problems connected with the appropriate person to be suspended under section 1125.1 of the School Code,[4] were the proper subject of grievances. Therefore, we held that the school district's *basis* for initiating

---

**3.** Our scope of review of an arbitrator's decision is highly circumscribed, and we will not overturn an award if it draws its "essence" from the collective bargaining agreement, that is, if the arbitrator's decision could rationally be derived from the collective bargaining agreement, viewed in light of its language, its context and any other indicia of the parties' intention. *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981); *Garnet Valley Service Personnel Association v. Garnet Valley School District*, 128

Pa.Cmwlth. 182, 563 A.2d 207 (1989). Where it is determined that the subject matter of the dispute is encompassed within the terms of the collective bargaining agreement, the validity of the arbitrator's decision is not a matter of concern to the court. *Leechburg.*

**4.** Added by section 3 of the Act of November 20, 1979, P.L. 465, *as amended*, 24 P.S. § 11–1125.1.

the suspensions, i.e., its determination of a decline in student enrollment, was not subject to the arbitrator's review. In *North Star*, we stated that:

The District argues that Section 1124 of the Code does not provide that the arbitrator may decide the basis for initiating the suspensions because the legislature specifically reserved that function to the Board. We agree.

. . . .

Further, we note that the legislature inserted no provision in Section 1124 of the Code permitting the parties to preempt any of the grounds for suspension by way of their collective bargaining agreement. This is in direct contrast to Section 1125.1(e) of the Code, wherein the legislature provided that '[n]othing contained in section 1125.1(a) through (d) shall be construed to supersede or preempt any provisions of a collective bargaining agreement. . . .' 24 P.S. § 11–1125.1(e).[5]

*Id.* at 162–63.

Similarly, the School District here contends that the School Board was the only authority empowered by the legislature to determine initially whether a substantial decrease in student enrollment justified Harrington's suspension under section 1124 of the School Code. The School District asserts that review of this determination must come by way of an appeal under Local Agency Law where, as here, the parties do not dispute that, *if* the basis for suspension is proper, Harrington was the proper person to suspend.

■■■ The Association, however, maintains that *North Star* is inapplicable here and, relying on *Rylke v. Portage Area School District*, 473 Pa. 481, 375 A.2d 692 (1977), and *Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association*, 69 Pa.Cmwlth. 208, 450 A.2d 787 (1982), claims that the School District's determination of substantial enrollment decline was arbitrable because it was within the essence of the CBA. The Association notes that, unlike the situation in *North Star*, where the parties' collective bargaining agreement incorporated a statutory savings clause providing for the School Code to govern the *manner* in which a reduction in employment shall be effected, the statutory savings clause here is not so limited. Rather, because section 11 of the CBA incorporated the School Code's job security provisions regarding teacher suspensions in their entirety, the parties here expressed their intent to submit *any* controversies involving employee suspensions to arbitration, including those arising under section 1124. We agree that the distinction in the CBA language is sufficient to remove this case from our holding in *North Star* and place it squarely within *Rylke* and *Greater Johnstown*.

In *Rylke*, a school district suspended three professional employees pursuant to section 1124 of the School Code, and the teachers filed a grievance pursuant to an established

5. In *North Star*, great emphasis is placed on the legislature's failure to provide a preemption provision in section 1124. We viewed this omission as an indication that the legislature was satisfied to let the school board and the Department of Education determine whether suspensions are warranted, rather than empower arbitrators to reconsider such concerns. However, we note that, although section 1124 does not itself contain preemptive language, section 1133 of the School Code states in pertinent part:

Nothing contained in sections 1121 through 1132 shall be construed to supersede or preempt a provision of a collective bargaining agreement in effect on July 23, 1970, or on any date subsequent thereto ... which agreement provides for the right ... to grieve and arbitrate the validity of a professional employe's termination for just cause or for the causes set

forth in section 1122 of this act.... Professional employes shall have the right to file a grievance under the collective bargaining agreement or request a hearing pursuant to section 1121 through 1132, but not both.

Added by section 4 of the Act of June 29, 1984, P.L. 438, 24 P.S. § 11–1133.

Although this section is directed primarily to the issue of termination, rather than suspension, of a professional employee, its application has not been limited to termination cases. *See Altoona Area Vocational–Technical Education Association v. Altoona Area Vocational Technical School*, 126 Pa.Cmwlth. 318, 559 A.2d 974 (1989), *appeal denied*, 525 Pa. 604, 575 A.2d 569 (1989) (holding that the doctrine of election of remedies in section 1133 barred arbitration of a grievance contesting a teacher's suspension).

four-step procedure in their collective bargaining agreement. When the school district refused to submit to the final step, binding arbitration, the grievants filed a complaint in mandamus seeking to force the school district to arbitration. The trial court dismissed the grievants' complaint and this court affirmed. However, our Supreme Court reversed and ordered the matter submitted to arbitration. Based on the statutory savings clause which incorporated the job security provisions, certification, and other regulatory provisions of the School Code into the collective bargaining agreement, the Court held that, by including the relevant School Code sections in the agreement, the parties intended to allow the arbitrator to decide whether the school district complied with those sections in suspending professional employees.

In *Greater Johnstown*, two teachers challenged their suspensions by filing a grievance under the just cause provisions of their collective bargaining agreement. The arbitrator concluded that one teacher was improperly suspended in disregard of seniority and certification rights set forth in section 1125.1 of the School Code, and the other teacher was improperly suspended based on the school's failure to secure approval of the Department of Public Instruction as required by section 1124(2) of the School Code. On appeal from the trial court's affirmance of the arbitration award, we cited *Rylke* and held that, in view of the statutory savings clause which incorporated the School Code into the collective bargaining agreement, the parties intended to allow the arbitrator to decide whether the school had complied with the relevant School Code provisions in suspending the teachers. Having concluded that the propriety of the suspensions was within the terms of the collective bargaining agreement, we upheld the award. *Greater Johnstown.*

The School District attempts to distinguish *Rylke* and *Greater Johnstown* from *North Star*, which it claims controls here. With regard to *Rylke*, the School District asserts that *Rylke* was a mandamus action in which our Supreme Court merely compelled the school district to comply with the binding arbitration procedure outlined in its collective bargaining agreement and, as such, the court never reached the issue in *North Star* concerning the arbitrator's authority to determine the actual basis for teacher suspensions.[6]

Likewise, the School District maintains that *Greater Johnstown* never reached the issue of an arbitrator's authority under section 1124(1) and (2) of the School Code. The School District reasons that, in *Greater Johnstown*, the arbitrator decided that one employee was suspended in disregard of seniority and certification rights, and that another employee was improperly suspended because the school did not secure Department of Public Instruction approval before altering its program. The School District asserts that these are issues which an arbitrator clearly is empowered to decide; whereas, as determined in *North Star*, the legislature reserved the function of deciding the basis for initiating suspensions under section 1124 of the School Code to the School Board. However, the School District's attempt to distinguish these cases from the one currently before us must fail.

Indeed, in *Greater Johnstown*, as here, the statutory savings clause in the collective bargaining agreement guaranteed suspended professional employees *all* their rights under the School Code. Based on that clause and *Rylke*, we concluded that the issue of a suspension's propriety under section 1124(2) of the School Code was within the terms of the collective bargaining agreement. Although the School District is correct that *Greater Johnstown* deals with Department of Public Instruction approval under section 1124(2), rather than decline in enrollment or curtailment of programs under that same section, this is not a meaningful distinction.

---

6. Indeed, in *North Star*, we make the same distinction. *Id.* 625 A.2d at 162. *But see, In re Portage Area Education Association*, 61 Pa. Cmwlth. 321, 432 A.2d 1170 (1981); *Greater Johnstown* (both applying *Rylke* for the proposition that incorporation of the Public School Code, including section 1124, into a collective bargaining agreement indicates the parties' intent to allow the arbitrator to determine whether a school district complied with relevant School Code provisions in suspending professional employees).

We concede that the language in *North Star* offers support for the School District's position; however, given the deference generally shown to arbitrators to determine what is arbitrable, *Mifflinburg Area Education Association v. Mifflinburg School District*, 118 Pa.Cmwlth. 328, 545 A.2d 419 (1988), and the fact that in *North Star*, we chose to make our holding "a narrow one," *id.* 625 A.2d at 164, we will limit *North Star* to its facts and affirm the arbitrator's award based on *Greater Johnstown*.[7]

### ORDER

AND NOW, this 31st day of January, 1996, the order of the Court of Common Pleas of Beaver County, dated August 5, 1994, is hereby affirmed.

SILVESTRI, Senior Judge, dissents.

7. Moreover, we agree with the trial court that unless we confine *North Star* to its facts, we render its holding inconsistent with that of *Rylke* and its progeny, making *North Star* an anomaly.