## WILLIAMSPORT AREA SCHOOL DISTRICT

v.

## WILLIAMSPORT EDUCATION ASSOCIATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1996.

Decided Dec. 13, 1996.

William A. Hebe, Wellsboro, for appellant.

Fred A. Holland, Williamsport, for appellee.

Before KELLEY and FLAHERTY, JJ., and RODGERS, Senior Judge.

FLAHERTY, Judge.

Williamsport Education Association (Association) appeals from an order of the Court of Common Pleas of Lycoming County (trial court), which granted the petition of the Williamsport Area School District (District) to vacate an arbitration award sustaining the grievance filed by the Association. The arbitration panel concluded that the parties intended the "maintenance of standards" clause contained in their Collective Bargaining Agreement (CBA) to apply to the dispute in question. The issue presented is whether the trial court erred in holding that this was not a rational interpretation of the CBA.

On November 6, 1990, the District and the Association entered into a CBA effective from July 1, 1990, through June 30, 1995. This agreement was extended through June 30, 1997, by subsequent addendum, which modified the CBA with respect to several provisions that are not material to the matter

presently at issue. The CBA contained a "maintenance of standards" clause, which provided, in pertinent part, as follows:

All Conditions of employment, including but not limited to hours of work, extra compensation for work beyond the regular work day, relief periods, leaves, and general personnel practices, shall be maintained at not less than the highest minimum standards in effect at the time this agreement is signed.

(Article 44 of the CBA, R.R. 173a.) In addition, the CBA contained a provision regarding preparation time for non-itinerant teachers, which stated, in pertinent part, as follows:

When elementary itinerant teachers of music, art and physical education are engaged in the instruction or supervision of students, the regular classroom teacher assigned to that group may ... be excused to pursue his or her professional duties within the building.

(Article 24 of the CBA, R.R. 173a.) In negotiations for this contract and in previous contract negotiations, all other proposals by the Association for a guaranteed amount of preparation time for all teachers were rejected by the District.

During the 1992–93 school year, the District employed seven elementary itinerant art teachers. At the end of that school year, two elementary art teachers retired. These teachers were not replaced by the District. Consequently, the number of students for which each remaining art teacher was responsible increased from approximately 500 students to 700 students, resulting in the art teachers being required to teach more class periods per day than previously, although there was no increase in the population size of each class. The Association filed a group grievance, alleging that the decrease in planning and set-up time, and the increase in teaching and duty time for the itinerant art teachers, violated the "maintenance of standards" provision of the CBA. When the parties were unable to resolve the grievance, it was submitted to binding arbitration pursuant to the CBA. The board of arbitrators, with one dissent by the partisan arbitrator appointed by the District, ruled in favor of

the Association, concluding that the parties intended increased classroom workload to be a "condition of employment" within the meaning of Article 44 of the CBA, and that the District, therefore, violated the "maintenance of standards" provision by increasing the workload for itinerant art teachers beyond the workload for which those teachers were responsible when the CBA was signed. As such, the arbitrators directed the District to restore the conditions of employment for itinerant art teachers to that which existed at the signing of the CBA.

On appeal by the District, the trial court vacated the arbitration award, finding that the conclusion of the arbitration panel was not a rational interpretation of the CBA. After a *de novo* review of the evidence, the court found that instructional workload did not constitute a "condition of employment" within the meaning of the CBA. In the trial court's opinion, the real issue was not the increase in instructional workload but the decrease in *preparation time;* as such, the lower court found that the specific provision in Article 24 of the CBA relating to preparation time for non-itinerant teachers rendered the general "maintenance of standards" provision of Article 44 inapplicable. In addition, the trial court cited *North Star School District v. North Star Education Association,* 155 Pa.Cmwlth. 368, 625 A.2d 159 (1993), *petition for allowance of appeal denied,* 537 Pa. 614, 641 A.2d 313 (1994), for the proposition that decisions relating to the hiring and firing of teachers are exclusively reserved to the District and the School Board. The Association now appeals to this court, arguing that the trial court impermissibly exceeded its narrow "essence test" standard of review and erred as a matter of law in substituting its own interpretation of the CBA for that reached by the arbitrators. We agree.

Under the "essence test" standard applicable in public labor disputes, the court's review of an arbitrator's award is extremely narrow and is limited to a determination of whether the arbitrator's decision could rationally be derived from the collective bargaining agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. As long as the

arbitration award represents a reasonable interpretation of the CBA, or draws its "essence" from the agreement, it is to be respected by the courts. *Pennsylvania Turnpike Commission v. Teamsters Local Union No. 250,* 162 Pa.Cmwlth. 633, 639 A.2d 968, 971 (1994); *see Community College of Beaver County v. Community College of Beaver County Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977).

■ As this court made clear in *Pennsylvania Turnpike,* when an arbitrator interprets a CBA, he is deciding a factual question regarding the parties intent, and a claim that the arbitrator has incorrectly interpreted such intent is not cognizable on appeal. As long as the arbitrator's conclusion can reasonably be drawn from the evidence, it should be upheld, despite the fact that a reviewing court believes a contrary conclusion is more sound. *Pennsylvania Turnpike,* 639 A.2d at 973. As this court has stated, "[a] reviewing court may disturb the [arbitration] award only where there is a manifest disregard of the [collective bargaining] agreement, completely unsupported by principles of contract construction." *Id.* at 972.

■ Here, in contravention of the arbitrators' interpretation, the trial court concluded that instructional workload was not intended to be a condition of employment within the meaning of the CBA. Moreover, as the trial court viewed the issue to be essentially over preparation time, it found that the arbitrators' interpretation of the "maintenance of standards" clause was not reasonable because it was inconsistent with the more specific clause dealing with preparation time for regular teachers and the bargaining history of the parties whereby the District consistently rejected any guaranteed level of preparation time for elementary teachers.

Although we do not dispute that the trial court's interpretation of the CBA was as reasonable as that of the arbitrators, we believe that the trial court clearly exceeded its narrow scope of review by flatly rejecting the arbitrators' conclusion that instructional workload was intended to be a condition of employment within the meaning of the CBA and by substituting its own interpretation of the agreement for that of the arbitrators. Although multiple interpretations of a CBA may be reasonable, the interpretation of the arbitrators prevails over that of the trial court so long as it is rationally derived from the essence of the CBA. *Pennsylvania Turnpike.* Here, the issue presented to the trial court was not whether the arbitration panel *correctly* interpreted the intent of the parties, but rather whether the arbitrators' award could in any way have been rationally derived from the CBA. By decreasing the number of art teachers employed by two, the District increased the number of students that each remaining art teacher must oversee from 500 to 700 students, thus requiring each teacher to spend more "hands-on" time with students, more clean up time, more time grading and evaluating performance, and more time meeting and discussing student progress with parents, all of which must be accomplished within the same workday. It is not unreasonable to conclude that the parties intended the "maintenance of standards" provision in the CBA to prohibit such an increase in instructional workload; therefore, deference was warranted for the arbitrators' conclusion as it was rationally based on the CBA.

Contrary to the reasoning of the trial court, our decision in *North Star* does not mandate a different result. In that case, this court reversed the decision of an arbitrator, who had overturned a school board's suspension of two teachers due to a decrease in student enrollment. The court in *North Star* reasoned that the arbitrator had exceeded his authority because the CBA in question provided that the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 1-101 et seq., would govern the manner in which reductions in work force would be effected and the Code provided that the school board had discretion to suspend teachers based on declining enrollment. As such, this court held that the arbitrator had no authority to decide *whether* suspensions were warranted, but only whether the *appropriate persons* were suspended. We reasoned that the arbitrator had exceeded his authority because the fact that the CBA incorporated the Code's basis for hiring

and firing staff, which gave discretion to the school board, made the issue of whether the board had a proper basis for initiating the suspensions *non-arbitrable* under that particular CBA. However, in so holding we acknowledged that, absent such a restriction in the CBA, "an arbitrator's determination of what is arbitrable is to be accorded great weight." *North Star*, 625 A.2d at 163 n. 11.

In the instant case, unlike *North Star*, the CBA between the District and the Association does not incorporate any statutory standards with respect to teacher workload or preparation time; as such, the issue of whether the parties intended the "maintenance of standards" clause to apply to the facts presented was an appropriate issue for arbitration under the CBA in question. Therefore, deference was warranted for the arbitrators' resolution of this issue. Having already found the arbitrators' decision to be reasonably based on the CBA between the parties, we reverse the decision of the trial court and reinstate the award of the arbitrators in its entirety.

## ORDER

NOW, December 13, 1996, the order of the Court of Common Pleas of Lycoming County at No. 94–02020, dated November 7, 1995, is hereby reversed and the award of the arbitration panel is reinstated in its entirety.