# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Corrections     :
Officers Association,     :
                Petitioner     :
    :
         v.     :    No. 203 C.D. 2020
    :    Argued: October 15, 2020
Department of Corrections,     :
State Correctional Institution     :
at Benner,     :
                Respondent     :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION BY JUDGE BROBSON**       **FILED: December 15, 2020**


Pennsylvania State Corrections Officers Association (Association) petitions for review of a grievance arbitration award (De Treux Award), dated January 20, 2020, issued pursuant to the Public Employe Relations Act (PERA).[1] Arbitrator Walter De Treux denied the Association's grievance and concluded that the Commonwealth of Pennsylvania, Department of Corrections (Department) violated neither the relevant terms of the Collective Bargaining Agreement (CBA)[2] nor previously issued binding arbitration awards (Colflesh Awards),[3] when it split

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-.2301.

[2] The Commonwealth of Pennsylvania and the Association were parties to the CBA, which was in effect from July 1, 2017, to June 30, 2020. (Reproduced Record (R.R.) at 1a-13a.)

[3] As will be discussed at greater length in this opinion, the Colflesh Awards resulted from binding arbitration concerning the Commonwealth's State Correctional Institutions (SCIs) and bid post positions. *See Dep't of Corr. & Pa. State Corr. Officers Ass'n (Statewide Bid Post*
**(Footnote continued on next page…)**

bid the Infirmary Officer and Psychiatric Observation Cell (POC) Officer relief positions at the State Correctional Institution at Benner Township (SCI-Benner). For the reasons that follow, we affirm the decision.

## I. BACKGROUND

The facts underlying this matter are not in dispute. The Department and its employees are responsible for the care, custody, and control of inmates. In this regard, Article 2, Section 1 of the CBA provides, in pertinent part:

> It is understood and agreed that the [Department], at its sound discretion, possesses the right, in accordance with applicable laws, to manage all operations including the direction of the working force and the right to plan, direct, and control the operation of all equipment and other property of the [Department], except as modified by this Agreement.
>
> Matters of inherent managerial policy are reserved exclusively to the [Department]. These include but shall not be limited to such areas of discretion or policy as the functions and programs of the [Department], standards of service, its' [sic] overall budget, utilization of technology, the organizational structure and selection and direction of personnel.

(R.R. at 4a.) The Department has broad managerial discretion over how the prison operates, but it can, as it did in this case, agree to limit that discretion in situations where it bargained with the Association per the provisions of the CBA.

Operating a prison is a twenty-four-hour responsibility, and corrections officers (COs) are assigned to day, evening, and night shifts at each SCI. The Department's operational responsibilities occur seven days of the week,

_Grievance)_, AAA Case No. 14-3900-00908-09 (May 29, 2010); Award on Implementation, dated November 20, 2011. (R.R. at 18a-52a.) We note that the Department refers to the May 2010 Colflesh decision as an award, and the November 2011 "implementation" of the Colflesh decision as an award. The Association refers to both the May 2010 decision and the November 2011 decision as one award. Although it does not affect the analysis of our decision, for purposes of consistency, we will refer to the plural Colflesh Awards in this opinion.

resulting in COs working weekends and holidays. Additionally, during a work shift, the amount of contact a CO has with inmates, as well as the control over a "post" (*i.e.*, a specific assignment for that particular day), varies, with some posts having routine and regular contact with inmates, while others have very little to no contact. The parties have incorporated a process into the CBA that allows a CO, who is the most qualified senior bidder, the opportunity to work his or her shift at one of the more desirable posts, referred to as a "bid post." The CBA, Article 33, Section 18, provides:

> A [b]id [p]ost is a [CO] post that is desirable because it involves considerably reduced and/or limited inmate contact and control and, consequently, involves less of the demands normally associated with exercising care, custody and/or control over inmates for an eight-hour shift. Additionally, the work hours and/or days of such positions may be those typically considered as premium (*i.e.* 8 a.m.-4 p.m., Monday through Friday), but not necessarily operated on those hours and/or days.

(R.R. at 8a.) Article 33, Section 18(b) of the CBA provides, in relevant part:

> The [Department] agrees to post any vacancy in a permanent job assignment (*i.e.* not involving promotion) 15 days prior to the filling of such vacancy unless an emergency requires a lesser period of time. Employees at an institution . . . who are in the eligible job classification will be given an opportunity to bid on such a vacancy and preference shall be granted onto the qualified senior bidder. Whenever the vacancy is filled by a person other than the most qualified senior eligible employee bidding on the job, the institution superintendent or his representative will explain to the most qualified senior eligible employee the reason for selecting a less senior person . . . [and] [a] grievance under this Section may be pursued . . . .

(*Id.*) Article 33, Section 18(h) of the CBA provides:

> In the event that a new position is created after the issuance of this award [(*i.e.*, the Colflesh Awards)], and the parties are unable to agree whether the new position constitutes a bid post, the dispute will

3

be resolved by submission to the grievance and arbitration process set forth in Article 35 of this [CBA].[4]

(R.R. at 9a.) Accordingly, Article 33, Section 18 of the CBA limits the Department's managerial discretion to assign COs to certain posts within the SCI if the post constitutes a bid post.

Historically, the issue of which posts were bid posts varied across the SCIs in the Commonwealth. This ultimately led to arbitration between the parties, a decision, and the implementation of the Colflesh Awards on November 20, 2011.[5] Arbitrator Ralph H. Colflesh reviewed the various CO posts at each SCI and, after twelve days of arbitration hearings, used the following factors to decide which posts were bid posts: (1) the number of inmates with whom a CO on the post has to have "contact" with and have "control" over; (2) the frequency during an eight-hour shift that inmates must be contacted and controlled on the post; and (3) the intensity (otherwise described as the degree of effort) of the contact and control the CO must exert on the post. Arbitrator Colflesh then reviewed twenty-eight common posts within each SCI and, using his three factors, decided whether each post would be a bid post (assigned based on seniority) or a non-bid post (assigned by the Department's discretion). The arbitration resulted in awards that provided the Department and Association with statewide consistency on which positions at the SCIs were bid posts.

---

[4] The remaining subsections of Article 33, Section 18, concern matters relating to: (1) the permanent removal of employees for performance reasons from bid posts; (2) the procedures the parties must follow when removing an employee for performance issues from a bid post; and (3) emergency situations and inactivity that affect the need to fill the bid post. (R.R. at 8a, 9a.)

[5] For additional information on the parties' lengthy history concerning bid posts and their various collective bargaining agreements and side letters, *see Department of Corrections v. Pennsylvania State Corrections Officers Association*, 38 A.3d 975 (Pa. Cmwlth. 2011).

When a CO is awarded a bid post, the expectation is that he or she will remain at the post for the entire shift, absent being "relieved" by another CO for breaks or mealtimes during the shift (*i.e.*, a relief post). Arbitrator Colflesh deemed that the relief posts should also be awarded to a qualified senior bidder under the terms of the CBA. As to relief posts, the Colflesh Awards provide, in pertinent part:

> A post as used in my award includes [r]elief day posts for all those posts identified. These shall be bid except when management determines it to be necessary to fill such a post with a trainee to acquire the requisite training. Provided that relief bids shall be developed to cover multiple reliefs within the designated post. No relief bid shall be for a period of less than [two] days. With respect to reliefs, if the duties of a relief holder are not being performed during any period of a shift, the incumbent holding the relief bid shall be reassigned as necessary for that time.

(R.R. at 48a, 49a.) Although the Department initially disputed that the relief post needed to be a bid post position, it ultimately agreed that relief posts should also be awarded to the qualified senior bidder. The disagreement remaining between the parties now focuses on how (*i.e.*, which position should be utilized) to provide relief for the SCI-Benner POC bid post.

As a background, beginning in September 2018, the Department began rotating the CO assigned to the POC (POC Officer) with a CO assigned as a Utility Officer, a non-bid post position.[6] The POC Officer rotated back and forth between the POC and another CO position. Later, the Department used the Infirmary Officer,

---

[6] In August 2018, Department Policy 13.8.1, Access to Mental Health Care Procedures Manual, Section 2-Delivery of Mental Health Services, changed concerning observation levels for suicidal or potentially suicidal inmates housed within the SCI-Benner POC. (R.R. at 164a.) The revised Department policy established three levels of observation for COs depending on the particular inmate's psychological needs as determined by a psychiatric provider—constant, close, and regular watches. (R.R. at 142a-43a.) Two of the levels of observation, constant watch and close watch, require that the POC Officer be relieved every two hours when posted at the position. (*Id.*)

a bid post position, to relieve the POC Officer in a "split bid" arrangement. "Split bid arrangements" occur when one CO bid post is used as the relief for another CO bid post. The Association disagreed with the Department's use of the Infirmary Officer in the split bid arrangement.[7] The Association wanted the Department to use the Utility Officer as the relief position, provided that the Utility Officer became a bid post. Local Association President, Jonathan Gray, filed a class action grievance with the Department on September 26, 2018, citing Article 33, Section 18 of the CBA and claiming "[m]anagement is removing the POC Officer from his bid job on all shifts. Make grievants whole."[8] (R.R. at 15a.)

An arbitration hearing was held at SCI-Benner on October 21, 2019. (R.R. at 154a-60a.) Arbitrator De Treux, after the hearing, allowed the parties to file post-hearing briefs. Arbitrator De Treux noted in his Award that the parties were not able to agree on how to define the issue at the hearing; both parties, however, agreed to allow him to frame the issue. (R.R. at 175a.) Arbitrator De Treux defined the issue as follows:

> [Whether] the determination by SCI[-]Benner management to have the [POC] [b]id [p]ost [r]elief be a split bid with the Infirmary Officer position violate[s] Article 33, Section 18 of the [CBA] or the Colflesh Award[s][.] If so, what shall be the remedy?

(*Id.*) Arbitrator De Treux explained:

---

[7] We note that in the past the Department and Association agreed on a split bid arrangement for the SCI-Benner Outside Perimeter bid post and the Closed Circuit TV Monitor bid post. (R.R. at 166a.) In the present case, the Association did not agree to the Infirmary Officer and POC Officer split bid arrangement.

[8] On February 6, 2019, the parties' dispute was processed to a step one meeting pursuant to the terms of the grievance procedure in the CBA. At this procedural level, the Department did not want the POC Officer relief position to be a split bid post. (R.R. at 14a.) Before the arbitration hearing, however, the Department reviewed its position and agreed that the relief position for the POC Officer should be a split bid post. (R.R. at 14a, 72a, 176a.)

6

The issue now presented by this evolving grievance is not whether management has the discretion to bid the POC [b]id [p]ost [r]elief position as it sees fit; but rather, [the issue is] how the position should be bid based on the needs and efficient operation of the facility and consistent with the [CBA] and Colflesh Award[s].

(R.R. at 176a-77a.)

Arbitrator De Treux, after determining the relevant issue, disagreed with the Department's argument that Article 2, Section 1 of the CBA gave it unilateral discretion to determine how the POC relief position should be filled. (R.R. at 176a.) Arbitrator De Treux recognized that, while the Department's managerial rights provision in the CBA is broad, it is restricted by the final phrase in Section 1— "except as modified by this agreement." (*Id.*) Moreover, Arbitrator De Treux observed that "[t]he parties' extensive negotiation and subsequent arbitrations related to [b]id [p]osts strongly indicate[s] that [b]id [p]osts are not simply left to [the Department's] discretion." (*Id.*)

Arbitrator De Treux, recognizing that the parties differed on how the position should be relieved, relied on SCI-Benner Major of the Guard Alfred Taylor's (Major Taylor) testimony at the arbitration hearing that supported a split bid relief position between the Infirmary Officer and the POC Officer. Arbitrator De Treux summarized Major Taylor's testimony, as follows:

[T]he Infirmary Officer is required to be aware of the inmates in the [I]nfirmary, including those in the POCs; and the POC and Infirmary Officers are familiar with the medical professionals who attend to the inmates. The Infirmary Officer is also responsible for the head count of the POCs and Infirmary inmates and [the Infirmary Officer] orders and delivers meal[s] to the inmates in the POCs . . . . [He] discourages the use of Utility Officers as POC relief because it affects the institution's ability to use Utility COs to perform a wide variety of functions throughout the prison. He explained that if he had to use one Utility Officer per shift for POC relief, one of three dining halls may have to be shut down, head counts could be delayed, and the ability to take inmates to recreational activities could be impacted.

7

He also noted that Utility Officers are used to transport inmates outside the prison, *e.g.*, to the hospital. A Utility Officer designated as POC [r]elief could not be given an assignment that takes him/her outside the prison. [He] stated that he currently taps different Utility Officers shift to shift and during shifts to relieve the POC Officer based on operational considerations. He has not been able to designate one specific Utility Officer to provide relief due to the varying assignments and duties of the Utility Officers. He acknowledged that the POC Officer backfills for the Utility Officer, but logistical and operational issues have not always allowed for a seamless and timely transition.

(R.R. at 177a-78a.) Arbitrator De Treux noted that the Association argued for a split bid relief position using the Utility Officer and the POC Officer and also asserted that the CBA and the Colflesh Awards did not allow for the blending of bid positions. (R.R. at 178a.) Arbitrator De Treux determined that the Association's support for this "argument, however, is not readily apparent." (*Id*.) Arbitrator De Treux reasoned that the Association's reliance on the Colflesh factors would help "determine whether a post should be bid, not how it should be bid," and the Association "has not cited to any provision of the [CBA] or the Colflesh Awards that would suggest the [Department] is prohibited from blending bid post positions to provide relief." (R.R. at 179a.) Arbitrator De Treux further explained:

Clearly, it is desirable for the Association and the bargaining unit to have a new bid post position open to any eligible bargaining unit member who wishes to bid on it. Article [33, Section] 18(h) is the only contract provision that addresses new positions created after the issuance of the Colflesh Award[s]. It refers to disputes over whether the new position should be a bid post, not how that new position should be bid. As such, there is a gap in the contract language that has to be filled by the parties through negotiations rather than through arbitration. There is simply no contractual basis on which to blanketly [sic] declare that the blending of bid posts to provide relief is contrary to the parties' agreement or the Colflesh Award[s].

(*Id*.) Arbitrator De Treux concluded that the Association had not offered an operational argument for the use of a split bid relief between the POC Officer and

the Utility Officer; accordingly, he found that Major Taylor's testimony "on the efficiency of a split bid between the POC Officer and [the] Infirmary Officer stands unrefuted" and determined that the POC bid post relief could be split between the POC Officer and the Infirmary Officer. (R.R. at 179a, 180a.) This appeal followed.

## II. DISCUSSION

The Association requests that Arbitrator De Treux's Award be vacated and its grievance sustained because the POC bid post relief position cannot be blended with an already established position; instead, the position must be subject to CO bidding as a bid post. The Association argues that the Colflesh Awards are precedent and that allowing the POC bid post relief position to be split is contrary to the Colflesh Awards and the CBA. The Association also argues that evidence of past practices of the parties supports that the POC bid post relief position cannot be split between the POC Officer and the Infirmary Officer. Finally, the Association argues that the Department's managerial prerogative is an insufficient basis to split the bid post relief, is contrary to the Colflesh Awards, and does not logically flow from the parties' CBA.

Our standard of review for grievance arbitration awards is the "essence test." *Millcreek Twp. Sch. Dist. v. Millcreek Educ. Support Pers. Ass'n*, 210 A.3d 993, 1001 (Pa. 2019). The essence test is an exceptionally deferential standard because binding arbitration is a highly favored method of dispute resolution. *Northumberland Cnty. Comm'rs v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO Local 2016, Council 86,* 71 A.3d 367, 374 (Pa. Cmwlth. 2013). An arbitrator's award must draw its essence from the collective bargaining agreement. *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Pro. Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). Pursuant to the "essence test," an

9

award should be upheld if: (1) the issue, as properly defined, is within the terms of the collective bargaining agreement; and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement.[9]  *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007).

It is well-established law, however, that "[a]n arbitrator's findings of fact are not reviewable by an appellate court, and[,] as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Pa. Tpk. Comm'n*, 87 A.3d at 909.  Further, a reviewing court may not engage in a merits review of the matter and will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.  *Westmoreland Intermediate Unit # 7*, 939 A.2d at 863; *Cheyney Univ.*, 743 A.2d at 413.

With our standard of review in mind, we address the first essence test factor—whether the issue, as properly defined, is within the terms of the CBA.  As noted above, Arbitrator De Treux defined the issue as follows:

> [Whether] the determination by SCI[-]Benner['s] management to have the [POC] [b]id [p]ost relief be a split bid with the Infirmary Officer position violate[s] Article 33, Section 18 of the [CBA] or the Colflesh Award[s][.]  If so, what shall be the remedy?

---

[9] There is also a narrow exception to the essence test, used when the arbitration award contravenes well-settled public policy.  *Pa. Tpk. Comm'n v. Teamsters Local Union No. 77*, 87 A.3d 904, 911 (Pa. Cmwlth. 2014).  Neither party argues that the public policy exception to the essence test applies in this case.

10

(R.R. at 175a.) As neither party has argued in their briefs that Arbitrator De Treux's framing of the issue is improper, we consider this to be the properly defined issue in this matter.

We next must determine if this issue is within the confines of the CBA. The CBA provides two sections that the parties each have relied upon in their respective arguments—Article 2, Section 1 of the CBA, which gives the Department broad management rights to operate the Commonwealth's SCIs subject to some limitations, and Article 33, Section 18 of the CBA, which addresses numerous matters related to bid post positions. Absent from the express language of Article 33, Section 18 of the CBA, however, is the issue before us—*how* the relief for bid post positions should be determined. Nevertheless, given the broad scope of bid protest issues in Article 33, Section 18 and the parties' specific desire to grieve and arbitrate issues, such as when a new position constitutes a bid post in Section 18(h), we agree with Arbitrator De Treux that the decision *how* the relief for a bid post should be determined is implicitly within the scope of the language used in this section of the CBA, and it is the parties' intent to grieve and arbitrate this dispute to a resolution. Accordingly, we conclude that the issue as framed by Arbitrator De Treux is within the confines of the CBA.

As a matter preliminary to addressing the second factor in the essence test, we must address the Association's argument that the De Treux Award fails, in part, because it ignores the Colflesh Awards as precedent. The Association, to support its argument that the Colflesh Awards are precedential, directs our attention to three of this Court's prior cases.

First, in *Pennsylvania State Police v. Pennsylvania State Troopers Association*, 840 A.2d 1059 (Pa. Cmwlth.) (*Troopers Association*), *appeal*

11

*denied*, 853 A.2d 363 (Pa. 2004), we reviewed the Pennsylvania State Police's (PSP) appeal from an arbitration award sustaining a grievance filed by the Troopers Association that argued PSP lacked just cause to transfer a trooper out of a specialized position. The arbitrator determined that PSP's transfer of the employee was for disciplinary reasons and, under the collective bargaining agreement, all disciplinary transfers could be grieved. In reaching this conclusion, the arbitrator "examined prior arbitration decisions resolving grievances filed over the removal of members from specialized positions." *Troopers Association*, 840 A.2d at 1061. In concluding that the arbitrator did not exceed his authority, we observed that the arbitrator "interpreted the [collective bargaining agreement] and prior arbitration awards to permit arbitral review if the transfer was a disciplinary measure . . . [and] [t]hat the transfer was made for disciplinary reasons was plainly a finding of fact." *Id*. at 1063.

Second, in *Bradford Area School District v. Bradford Area Education Association*, 663 A.2d 862 (Pa. Cmwlth. 1995), *appeal denied*, 674 A.2d 1076 (Pa. 1996), involving opposing interpretations of the collective bargaining agreement between the parties, this Court noted:

> Although we have never given preclusive effect to a pre[-]arbitration grievance decision, our recent decision in *School District of Philadelphia v. Philadelphia Federation of Teachers*, . . . 651 A.2d 1152 ([Pa. Cmwlth.] 1994) [(*Federation of Teachers*), *appeal denied sub nom. Philadelphia Federation of Teachers, Local 3, American Federation of Teachers, AFL-CIO v. School District of Philadelphia*, 668 A.2d 1141 (Pa. 1995)], recognizes that for the sake of stability in collective bargaining relations, an arbitrator must accept

a prior arbitration decision interpreting an identical contract provision in a subsequent arbitration involving the same parties.[10]

*Bradford Area Sch. Dist.*, 663 A.2d at 864 n.1.

Third, the Association argues that *Federation of Teachers* supports its position that "an award is in conflict with the essence test where it fails to follow prior arbitration decisions which involve[] the same parties and the same contract provisions." (Association's Brief at 21.) In *Federation of Teachers*, the school district appealed the arbitrator's award that prohibited the school district from changing the content of certain jobs. *Fed'n of Tchrs.*, 651 A.2d at 1153. The arbitrator, "[i]n a prior dispute between the parties involving the interpretation of the same provision of the parties' collective bargaining agreement . . . [and] relying upon previous arbitration decisions, held that past practice cannot contravene the [school] [d]istrict's unilateral power under the [a]greement to change the content of jobs." *Id*. The Court of Common Pleas of Philadelphia County denied the school district's petition for review to set aside the award. On appeal to this Court, after applying the essence test, we concluded that the arbitrator's award contradicted his prior decision and those upon which he relied, involving the same parties, the same controlling issue, and the same or substantially the same clauses of the agreement and, therefore, did not represent a legitimate and reasonable interpretation of the agreement. *Id*.

Relying on the aforementioned cases, the Association argues that the Colflesh Awards are precedential because they concerned the same parties (*i.e.*, the

---

[10] In *Bradford Area School District*, we also recognized that, "[i]n the context of grievance resolution under the terms of a collective bargaining agreement, when a grievance has been submitted and no appeal is taken to the next level, the issue is resolved and binding pursuant to the terms of the collective bargaining agreement." *Bradford Area Sch. Dist.*, 663 A.2d at 864 (citing *Moshannon Valley Sch. Dist. v. Pa. Labor Rels. Bd.*, 597 A.2d 229 (Pa. Cmwlth. 1991), *appeal denied*, 609 A.2d 170 (Pa. 1992)).

Association and Department), addressed the same controlling issue (*i.e.*, bid post positions), and interpreted substantially similar clauses of the respective collective bargaining agreements. (Association's Brief at 21.) The Department counters that the Colflesh Awards have no precedential value in this situation. (Department's Brief at 11.) Specifically:

> Arbitrator De Treux was not bound by those prior awards as precedent when he drafted his recent decision and award. The instant matter obviously involves a different arbitrator (De Treux) than the prior Colflesh Awards . . . . More importantly, the prior Colflesh Awards did not involve the same contractual dispute or the same controlling issue between the parties. Again, Arbitrator Colflesh was called upon by the parties years ago to determine which positions within the [Department's] correctional institutions should be considered bid posts within the meaning of the CBA. The current dispute involves a completely different issue/dispute: how the employer may conduct the bidding for a specific post vacancy, *i.e.*, whether the CBA permits the employer to split the POC [b]id [p]ost [relief] position between the POC Officer and the Infirmary Officer. Certainly then, Arbitrator De Treux here was not bound by the prior Colflesh Awards as precedent . . . .

> Regardless of whether Arbitrator De Treux was required to consider the Colflesh Awards as precedential, those prior awards offered no relevant substantive precedential value in this matter because they did not involve or contain legal analysis on the issue involved here.

(Department's Brief at 11, 12.) After careful consideration, we agree with Arbitrator De Treux and the Department that the Colflesh Awards are not precedential in this matter.

While the Colflesh Awards provide relevant factual background to the issue in this case and include persuasive and logical rationales as to how the arbitration was decided, the central issue involved in the Colflesh Awards was *whether* a post should be bid rather than *how* a bid post relief position should be filled. The Colflesh Awards provide a foundation and have persuasive value for the more nuanced issue

14

of how a particular bid post position should be relieved, but the decisions do not establish binding precedent that Arbitrator De Treux was required to follow here.

Moving to the second factor of the essence test, we must determine if Arbitrator De Treux's Award is rationally derived from the CBA. The Association argues that the De Treux Award, which allows the POC bid post relief position to be split bid, is contrary to the Colflesh Awards and, therefore, is not rationally derived from the parties' CBA. The Association's argument fails for three reasons. First, as we previously determined, the Colflesh Awards are not precedential for the issue in this case—*how* a bid post relief position should be filled. Second, the record reflects that the Department is using a bid post position, the Infirmary Officer, to relieve another bid post position, the POC Officer. Even if the Colflesh Awards were precedential, the Department's actions do not violate the Colflesh Awards. Third, as Arbitrator De Treux recognized, the Association "has not cited to any provision of the [CBA] or the Colflesh Awards that would suggest the [Department] is prohibited from blending bid post positions to provide relief." (R.R. at 179a.) We agree with Arbitrator De Treux's conclusion.

The Association's next argument is that "[a]n arbitrator, reviewing a [collective bargaining agreement] under the PERA, may utilize the past practices of the parties in order to properly determine the issue(s) before the parties to interpret the [collective bargaining agreement]." (Association's Brief at 24.) We have held that a past practice

> must be shown to be the accepted course of conduct characteristically repeated in response to the given set of underlying circumstances. That is not to say that the course of conduct must be accepted in the sense that both parties [have] agreed to it, but rather that it must be accepted in the sense of being regarded by the [parties] involved as the normal and proper response to the underlying circumstances presented.

15

*Penns Manor Area Sch. Dist. v. Penns Manor Area Educ. Support Pers. Ass'n*, 953 A.2d 614, 618 (Pa. Cmwlth. 2008) (emphasis omitted) (quoting *Allegheny Cnty. v. Allegheny Cnty. Prison Emps. Indep. Union*, 381 A.2d 849, 852 n.12 (Pa. 1977)). Evidence of past practice can be used by an arbitrator to review the issue of the collective bargaining agreement in the following situations:

> (1) to clarify ambiguous language; (2) to implement contract language which sets forth only a general rule; (3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and (4) to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the [collective bargaining agreement].

*Allegheny Cnty.*, 381 A.2d at 852. The Association argues that Arbitrator De Treux "used evidence of the parties' past practices to clarify the ambiguous language in the CBA regarding bid post relief positions." (Association's Brief at 25.) Specifically, Arbitrator De Treux highlighted the fact that the parties have split bid posts for other CO positions by express agreement. The Association submits that the parties to the CBA agreed to split bid the Outside Perimeter position and the CCTV position and, absent the Association agreeing to do the same with the POC bid post relief position, Arbitrator De Treux's award is logically inconsistent. (*Id.*) We disagree with the Association's argument.

First, as we have already recognized, Article 2, Section 1 of the CBA gives the Department broad management rights to operate the Commonwealth's SCIs, but those rights are limited if the issue is part of the CBA, and Article 33, Section 18 addresses numerous matters related to bid post positions. We conclude that together both sections of the CBA provide an appropriate legal foundation for Arbitrator De Treux to determine whether the Department's use of the Infirmary

16

Officer to provide split bid post relief to the POC Officer violated the terms of the CBA.

Second, while Arbitrator De Treux referenced the parties' past practice of agreeing to split bid the Outside Perimeter position and the CCTV position, he also recognized the Association had not offered an operational argument for the use of a split bid between the POC Officer and the Utility Officer. Arbitrator De Treux appropriately relied on Major Taylor's testimony "on the efficiency of a split bid between the POC Officer and [the] Infirmary Officer" which was unrefuted by the Association. (R.R. at 179a, 180a.) The fact that the parties agreed to split bid the Outside Perimeter position and the CCTV position in the past does not mean that Arbitrator De Treux was confined, especially in the absence of argument from the Association on the merits of the Department's resolution to the issue, to conclude in this arbitration that the Department's resolution was not within the scope of the CBA.

Finally, the Association argues that the Department's managerial prerogative is an insufficient basis to split a bid post relief, contrary to the Colflesh Awards, and, therefore, does not logically flow from the CBA. We previously addressed that Arbitrator De Treux correctly determined the Department's managerial rights under Article 1, Section 2 of the CBA are restricted to the extent the CBA addresses the topic in Article 33, Section 18. Arbitrator De Treux further determined that the Department's use of the Infirmary Officer position to provide relief to the POC Officer position did not violate Article 33, Section 18 of the CBA.

Our review of the record indicates that during the arbitration process the parties had the opportunity to present their cases, along with evidence that one position, such as the Utility Officer, would be better as a relief position for the bid

17

post rather than the Infirmary Officer. Arbitrator De Treux, relying on Major Taylor's unrefuted testimony as to the efficiency of a split bid relief between the POC Officer and the Infirmary Officer, concluded that the Department could split bid the POC bid post relief position. We conclude that Arbitrator De Treux's Award meets the second factor of the essence test because it is rationally derived from the CBA.

### III. CONCLUSION

Because the arbitration does not violate either factor of the essence test, we affirm Arbitrator De Treux's award.

P. KEVIN BROBSON, Judge

18

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Pennsylvania State Corrections : 
Officers Association, : 
                       Petitioner : 
                                   : 
              v. :   No. 203 C.D. 2020
                                   : 
Department of Corrections, : 
State Correctional Institution : 
at Benner, : 
                    Respondent : 

# **O R D E R**

AND NOW, this 15th day of December, 2020, the arbitration award dated January 20, 2020, is hereby AFFIRMED.

 

                                            
_____

                                            P. KEVIN BROBSON, Judge